**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>GUNTON CORPORATION,<br><br>        Defendant. | Civil Action No.: 2:25-cv-06074-GAM |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Defendant Gunton Corporation ("Defendant"), through its undersigned counsel, respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Jourey Newell's First Amended Class Action Complaint (the "Complaint") pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of standing.

## TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………………………1-2

II.   LEGAL STANDARDS……………………………………………………………2-4

      A.    The United States Supreme Court Has Held a Complaint Must Satisfy the Plausibility Standard It Set Forth in *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly* to Survive a Motion to Dismiss………………………………………2-3

      B.    Motions to Dismiss for Lack of Article III Standing Under Rule 12(b)(1)……..3-4

      C.    To Satisfy Article III's Standing Requirement, a Plaintiff Must Plausibly Establish that He or She Suffered a Concrete Injury-in-Fact……………………….....4-5

III.  SUMMARY OF RELEVANT FACTS……………………………………………...5-10

IV.   ARGUMENT……………………………………………………………………10-22

      A.    Plaintiff Cannot Meet His Burden of Plausibly Establishing He Has Standing to Assert a Claim under TCPA Section 227(c)(5) Because He Registered the Number at Issue as the Number for His Businesses and Held such Number Out to the World as a Business Number………………………………………………………...10-16

      B.    Plaintiff Lacks Standing to Assert a Claim under TCPA Section 227(b)(1)(A)(iii)……………………………………………………………...16-20

            1.    There Is No Common-Law Analogue for the Three Ringless Voicemails Allegedly Left on the Number at Issue—a Business Number………..16-18

            2.    Courts Have Held the Types of Tangible Injuries Plaintiff Alleges Do Not Satisfy Article III's Standing Requirement…………………………...18-21

      C.    Plaintiff Lacks Standing to Assert a Claim or Request for Injunctive Relief…21-22

V.    CONCLUSION……………………………………………………………………..22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*
　　556 U.S. 662 (2009)…………………………………………..…….....…………..2

*Bank v. Independence Energy Group LLC*
　　2014 U.S. Dist. LEXIS 141141 (E.D.N.Y. 2014)………………………...……………10

*Bank v. Independence Energy Grp. LLC*
　　2015 U.S. Dist. LEXIS 96532 (E.D.N.Y. 2015)…………………………………....……12

*Bell Atlantic Corp. v. Twombly*
　　550 U.S. 544 (2007)……………………………………………………….…………2

*Brooks v. PSCU, LLC*
　　2025 U.S. Dist. LEXIS 110323 (M.D. Fla. 2025)……………………………...……21

*Bryant v. Pottsgrove Sch. Dist.*
　　2025 U.S. Dist. LEXIS 184640 (E.D. Pa. 2025)…………………………………..……3

*City of Los Angeles v. Lyons*
　　461 U.S. 95 (1983)……………………………………………………….…………...…..22

*Collier v. Aksys Ltd.*
　　2005 U.S. Dist. LEXIS 20300 (D. Conn. 2005)……………………………………14

*Corr. Med. Care, Inc. v. Gray*
　　2008 U.S. Dist. LEXIS 6596 (E.D. Pa. 2008)………………………………………..17

*Cottrell v. Heritages Dairy Stores, Inc.*
　　2010 U.S. Dist. LEXIS 104308 (D.N.J. 2010)……………………………...…………………3

*Doug Grant, Inc. v. Greate Bay Casino Corp.*
　　232 F.3d 173 (3d Cir. 2000)…………………………………………………………3

*Eldridge v. Pet Supermarket, Inc.*,
　　446 F. Supp. 3d 1063 (S.D. Fla. 2020)……………………………………...…………20

*Fenwick v. Orthopedic Specialty Institute, PLLC*
　　2020 U.S. Dist. LEXIS 21566 (S.D. Fla. 2020)………………………………...………20

*Garcia v. FCA United States LLC*
　　2021 U.S. Dist. LEXIS 255713 (S.D. Fla. 2021)…………………………...………..20

*Gillam v. Reliance First Cap., LLC*
    2023 U.S. Dist. LEXIS 29477 (E.D.N.Y. 2023)……………………………...…………14

*Gould Elecs. Inc. v. U.S.*
    220 F.3d 169 (3d Cir. 2000)……………………………………….……….…....3, 13

*Grant v. Regal Auto. Grp., Inc.*
    2022 U.S. Dist. LEXIS 244017 (M.D. Fla. 2022)………………….……….…....…12

*Grigorian v. FCA US LLC*
    838 F. App'x at 390 (11th Cir. 2020)……………………….…………...……18

*Harris v. Travel Resorts of Am., Inc.*
    2021 U.S. Dist. LEXIS 257303 (S.D. Fla. 2021)……………………...…………19

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*
    836 F.3d 261 (3d Cir. 2016)………………………………………….………....……3

*Hicks v. Alarm.com Inc.*
    2020 U.S. Dist. LEXIS 157433 (E.D. Va. 2020)…………………………….…...14

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*
    2005 FCC LEXIS 1158 (2005)………………………………………...………11

*Iwanowa v. Ford Motor Co.*
    67 F. Supp. 2d 424 (D.N.J. 1999)…………………………………...…….……3

*Leyse v. Bank of Am. Nat'l Ass'n*
    804 F.3d 316 (3rd Cir. 2015)……………………………………...……5, 17

*Leyse v. Bank of Am. Nat'l Ass'n*
    856 Fed. Appx. 408 (3rd Cir. 2021)…………………………...…….……4

*Mittenthal v. Fla. Panthers Hockey Club, Ltd.*
    472 F. Supp. 3d 1211 (S.D. Fla. 2020)………………………….…………...21

*Petruska v. Gannon Univ.*
    462 F.3d 294 (3d Cir. 2006)………………………………….……………...21

*RLO Grp. LLC v. Fonseca*
    2025 U.S. Dist. LEXIS 188194 (E.D.N.Y. 2025)…………………….…………..17

*Salcedo v. Hanna*
    936 F.3d 1162 (11th Cir. 2019)……………………………………………18, 20

*Schaevitz v. Braman Hyundai, Inc.*
    437 F. Supp. 3d 1237 (S.D. Fla. 2019)………………………………………………21

*Shelton v. Pro. Source Lending Grp. LLC,*
    2025 U.S. Dist. LEXIS 46534 (E.D. Pa. 2025)………………………….….….15

*Shelton v. Target Advance LLC*
    2019 U.S. Dist. LEXIS 64713 (E.D. Pa. 2019)…………………….….…...1, 11, 15

*Spangenberg-Dana v. Auto. Ins. Co. of Hartford*
    2026 U.S. Dist. LEXIS 40473 (E.D. Pa. 2026)……………………………………3

*Susinno v. Work Out World Inc.*
    862 F.3d 346 (3rd Cir. 2017)…………………………………….….…2, 17

*Toney v. Advantage Chrysler-Dodge-Jeep*
    2021 U.S. Dist. LEXIS 141242 (M.D. Fla. 2021)………………….………20

*TransUnion LLC v. Ramirez*
    594 U.S. 413 (2021)……………………………...….……2, 4, 5, 14, 16, 22

*Teri Woods Publ, L.L.C. v. Williams*
    2013 U.S. Dist. LEXIS 52745 (E.D. Pa. 2013)………….………………2, 17

*U.S. v. Morton Salt Co.*
    338 U.S. 632 (1950)………………………………………...………17

*Worsham v. Disc. Power, Inc.*
    2021 U.S. Dist. LEXIS 1931 (D. Md. 2021)………………….…...………11, 12, 15

**Statutes**

47 U.S.C. § 227(c)(5)………………...………………………1, 9, 10, 11, 15, 16

47 U.S.C. § 227(b)(1)(A)(iii)……………………………………1, 2, 9, 16, 20

**Other Authorities**

47 C.F.R. § 64.1200(c)……………………………….….……………10, 11

Fed. R. Civ. P. 12(b)(1)…………………………...………………1, 3

## I.    <u>INTRODUCTION</u>

Plaintiff Jourey Newell ("Plaintiff") asserts a claim for alleged violations of TCPA[1] Section 227(c)(5) based on alleged calls and texts to a number ending 4132 (the "Number at Issue") after such number was allegedly registered on the National Do Not Call Registry ("NDNCR").[2]  *See generally* ECF No. 12.  Plaintiff also asserts a claim for alleged violations of TCPA Section 227(b)(1)(A)(iii) based on alleged pre-recorded, ringless voicemails left on the Number at Issue. *Id*.

This is not your typical TCPA case.[3]  The alleged calls and texts were business to business communications to a number Plaintiff registered as the number for his businesses and held out to the world as the number for his businesses.  Plaintiff therefore lacks standing to assert a claim under TCPA Section 227(c)(5) because such section does not apply to business numbers or to business to business communications (like those here).  *Shelton v. Target Advance LLC*, 2019 U.S. Dist. LEXIS 64713, *14-18 (E.D. Pa. 2019) (dismissing a NDNCR claim for lack of standing because the plaintiff "held the Phone Number out to the world as a business phone number" and therefore did not suffer "an injury-in-fact by way of receiving business-to-business robocalls on a phone number he registered on the National Do Not Call Registry").  As a result, Plaintiff's claim under TCPA Section 227(c)(5) must be dismissed for lack of Article III standing.

Plaintiff's claim under TCPA Section 227(b)(1)(A)(iii) must also be dismissed for lack of Article III standing because "even in the context of a statutory violation," he "must demonstrate"

---

[1] TCPA refers to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

[2] Courts are split on whether TCPA Section 227(c)(5) applies to texts but whether they do or do not has no bearing on Defendant's instant motion to dismiss.

[3] As an aside, this is one of more than at least two dozen TCPA lawsuits Plaintiff has filed.  One of these other lawsuits is a lawsuit entitled *Newell v. JR Cap., LLC*, civil action number 25-cv-1419, which is also pending before the Court.

that he "suffered a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "No concrete harm, no standing." *Id*. For an alleged harm to be "concrete" to satisfy Article III's standing requirement, a plaintiff must establish the alleged harm has a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" or a "common-law analogue." *Id*. at 417, 424. Consumers typically identify invasion of privacy as the common-law analogue for claims under TCPA Section 227(b)(1)(A)(iii).[4] However, there is no common-law analogue for the three alleged ringless voicemails left on the Number at Issue (i.e., a business number), which were business to business communications. *Teri Woods Publ, L.L.C. v. Williams*, 2013 U.S. Dist. LEXIS 52745 (E.D. Pa. 2013) (holding businesses, corporations, partnerships, or unincorporated associations have no right to privacy under Pennsylvania law and dismissing an invasion of privacy claim brought by a LLC). Plaintiff therefore cannot meet his burden of establishing he suffered a "concrete" injury sufficient to satisfy Article III's standing requirement to assert a claim under TCPA Section 227(b)(1)(A)(iii).

## II.  LEGAL STANDARDS

**A.    The United States Supreme Court Has Held a Complaint Must Satisfy the Plausibility Standard It Set Forth in *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly* to Survive a Motion to Dismiss.**

To survive a motion to dismiss, a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

---

[4] The Third Circuit has held intrusion upon seclusion is the common-law analogue that drives the standing analysis for TCPA claims. *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351-352 (3rd Cir. 2017).

reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Conclusions of fact and law "are . . . not entitled to the assumption of truth" and may be disregarded. *Iqbal*, 556 U.S. at 679; *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (courts "need not accept as true unsupported conclusions and unwarranted inferences").

**B.    Motions to Dismiss for Lack of Article III Standing Under Rule 12(b)(1).**

Motions to dismiss for lack of Article III standing are "properly brought pursuant to Rule 12(b)(1) because Article III provides jurisdictional limitation[s]' that implicate the Court's power to hear claims." *Bryant v. Pottsgrove Sch. Dist.*, 2025 U.S. Dist. LEXIS 184640, *3 (E.D. Pa. 2025); *see also Gould Elecs. Inc. v. U. S.*, 220 F.3d 169, 176 (3d Cir. 2000).

Motions to dismiss for lack of standing can be based on a facial or factual challenge. *Gould Elecs. Inc.,* 220 F.3d at 176. A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish" jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A factual challenge "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). Where a factual challenge is mounted, a "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006); *see also Hartig Drug Co.*, 836 F.3d at 268 (a factual challenge "strips the plaintiff of the protections and factual deference provided under" a facial challenge). Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, 2010 U.S. Dist. LEXIS 104308 (D.N.J. 2010); *Spangenberg-Dana v. Auto. Ins. Co. of Hartford*, 2026 U.S. Dist. LEXIS 40473, *3 (E.D. Pa. 2026) ("no presumptive

truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims"). Plaintiff fails to meet this burden regardless of whether the Court construes Defendant's instant challenge as a facial or factual challenge.

**C.    To Satisfy Article III's Standing Requirement, a Plaintiff Must Plausibly Establish that He or She Suffered a Concrete Injury-in-Fact.**

"Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC*, 594 U.S. at 426. Put another way, "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . [and] [courts] cannot treat an injury as 'concrete' for Article III purposes based only on Congress's say-so" because Congress "may not simply enact an injury into existence" for Article III standing purposes. *Id*. at 426; *see also Leyse v. Bank of Am. Nat'l Ass'n*, 856 Fed. Appx. 408, 410-411 (3rd Cir. 2021) (the plaintiff "argues that, with respect to the TCPA, Article III standing does not require any allegations of harm beyond the statutory violations themselves . . . [w]e decline to adopt such an absolute rule of standing with respect to the TCPA").

"For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *TransUnion LLC*, 594 U.S. at 426-27. "Congress may enact legal prohibitions and obligations" "may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations." *Id*. "But under Article III, an injury in law is not an injury in fact." *Id*. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. "Article III grants federal courts the

4

power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id*. "A regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants who violate federal law not only would violate Article III but also would infringe on the Executive Branch's Article II authority." *Id*. at 428.

For the above reasons, the United Supreme Court has held that "[t]o have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm." *TransUnion LLC*, 594 U.S. at 417. "No concrete harm, no standing." *Id*. "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms . . ." *Id*. This "inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. at 424. If they do not (like here), they fail to meet their burden of establishing they suffered a concrete injury sufficient to satisfy Article III's standing requirement. *Id*. at 424-25; *see also Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3rd Cir. 2015) ("Congress's broad grant of statutory standing would not enable every 'person or entity' to sue under the [TCPA] . . . Article III of the Constitution imposes its own standing requirements, and only certain plaintiffs will have suffered the particularized injury required to maintain an action in federal court for a [TCPA] statutory violation").

### III.    SUMMARY OF THE RELEVANT FACTS

Plaintiff has held and holds the Number at Issue out to the world as the number for his businesses, which include, but may not be limited to, Newell Contracting, LLC ("Newell Contracting"), Newell Landscaping, and Contractor Collections Co. ("CCC"). By way of example, Plaintiff registered the Number at Issue as Newell Contracting's number with the Office

of the Pennsylvania Attorney General (the "AG") in a filing required by the Pennsylvania Home Improvement Consumer Protection Act.[5]  Below is as a screen shot of this filing:

**Business Information**

| **Business Name** | **Applicant Type** | **In State (PA)** |
|---|---|---|
| Newell Contracting LLC | Limited Liability Company | Yes |

| **Business Street Address** | | **Mailing Address** |
|---|---|---|
| 2832 Dekalb Pike #1110 | | 2832 Dekalb Pike #1110 |
| East Norriton  PA, 19401 | | East Norriton  PA, 19401 |

| **Website Address** | **Business Phone** | **Expiration Date** | **Status** |
|---|---|---|---|
| | 4842134132 | 2/4/2027 | Approved |

*See* **Exhibit A** (Newell Contracting, LLC's Registration with the  Pennsylvania Office of Attorney).[6]

Plaintiff likewise registered the Number at Issue with the United States Department of Transportation (the "DOT") as Newell Contracting's number.  Below is a screen shot of this registration:

---

[5] Since 2008, the Pennsylvania Home Improvement Consumer Protection Act has required home improvement contractors who perform at least $5,000 worth of home improvements per year register with the AG.

[6] *See* https://hicsearch.attorneygeneral.gov/.  The Court may take judicial of the "Business Report" on the AG's website.  *Wright-Gottshall v. New Jersey*, 2024 U.S. App. LEXIS 10158, n.2 (3d Cir. 2024) (courts may "take judicial notice of information that is publicly available on government websites" when ruling on motions to dismiss).

| Legal Name | Phone Number | Email |
|---|---|---|
| Newell Contracting Llc | (484) 213-4132 (https://phone.gd/phone/484-213-4132) | NEWELLCONTRACTINGLLC@GMAIL.COM (mailto:NEWELLCONTRACTINGLLC@GMAIL.COM) |

| EIN Number | Location |
|---|---|
| 934123360 | 411 Brandywine Ln King Of Prussia, Pa 19406-2357, Us |

*See* **Exhibit B** (Newell Contracting LLC's Registration with the Department of Transportation).

Additionally, Plaintiff registered the Number at Issue as the business number for the landscaping services his business and/or businesses offered with www.govcb.com, a website that assists small businesses bid and compete for government contracts.  Below is a screen shot of this registration:

## Company Profile

**Company Name:**
NEWELL, JOUREY

**Govcb Vendor ID:**
SAM00000000001261661

**Year Established:**
2016

**Business Type:**
Small Business, Small Disadvantage Business

## Products & Services

**NAICS Code(s)**
- [561730] Landscaping Services

## Contact Information

**Contact Person:**
JOUREY NEWELL

**Address:**
409 BRANDYWINE LANE, KING OF PRUSSIA, Pennsylvania, USA

**Phone Number:**
(484) 213-4132

*See* **Exhibit C (**Registration with www.govcb.com regarding the landscaping services Plaintiff's business or businesses offered).

Plaintiff has also held the Number at Issue out to the world as the number for his business in other publicly available documents, including in publicly available court filings.  For example, Plaintiff—"doing business as Newell Landscaping"—filed a lawsuit against Christine Clark in the Court of Common Pleas of Montgomery County, Pennsylvania, Case Number 2018-20071.  In a publicly available court filing in such case, he identified the Number at Issue as Newell Landscaping's business number.  *See* **Exhibit D** (Filing from an action that proceeded Court of Common Pleas Montgomery County, Pennsylvania, Case Number 2018-20071).

In a different lawsuit, Plaintiff filed in the same jurisdiction on behalf of CCC, case number case number 2018-28194, he identified the Number at Issue as CCC's number.  *See* **Exhibit E** (Filing from an action that proceeded Court of Common Pleas Montgomery County, Pennsylvania, Case Number 2018-28194).  In yet another lawsuit that proceeded in the same jurisdiction, a publicly available court filing shows Plaintiff identified the Number at Issue as Newell Landscaping's number on an invoice issued by such company for snow removal services.  Below is a screen shot of this filing:

# INVOICE

**Newell Landscaping**
671 S. Gulph Rd.
King of Prussia, PA 19406

newell.landscaping@yahoo.com
(484)213-4132
www.getmowednow.com

*See* **Exhibit F**, pg. 36 (Filing from an action that proceeded Court of Common Pleas Montgomery County, Pennsylvania, Case Number 2022-16508).

Notably, Plaintiff never alleges in his Complaint that he does not use the Number at Issue as a business number.  *See generally* ECF No. 12.  Additionally, his allegations show Defendant's alleged communications to the Number at Issue were business to business communications.  In particular, the texts Plaintiff references in his Complaint state as follows:

> This is Rick Balabon with Pella Windows and Doors by Gunton Corporation.  Pella has something for everyone at every budget.  We are running a promotion just for our ***builders/contractors***—10% off your first project this year.  If you are interested, please respond and I am happy to set you up with a consultation.  Thank you.

> Struggling to sell windows and doors off of a brochure?  Pella Windows and Doors by Gunton Corporate has multiple showroom available to you.  ***Bring your customers*** in to let them touch and feel the product to enhance their . . .

ECF No. 12, ¶24 (emphasis added).

9

Against the above backdrop, Plaintiff attempts to assert a claim under TCPA Section 227(c)(5) based on alleged calls and texts to the Number at Issue after he allegedly registered such number on NDNCR on March 19, 2025.[7]  *See generally* ECF No. 12 and at ¶19.  Plaintiff also attempts to assert a claim against under TCPA Section 227(b)(1)(A)(iii) based on three alleged prerecorded, ringless voicemails left on the Number at Issue.  *See generally* ECF No. 12 at ¶58. Defendant now moves to dismiss such claims because Plaintiff fails to plausibly establish he satisfies Article III's standing requirement to assert such claims.

## IV.  **ARGUMENT**

**A.**  **Plaintiff Cannot Meet His Burden of Plausibly Establishing He Has Standing to Assert a Claim under TCPA Section 227(c)(5) Because He Registered the Number at Issue as the Number for His Businesses and Held such Number Out to the World as a Business Number.**

Plaintiff attempts to assert a claim under TCPA Section 227(c)(5) for allegedly receiving calls or texts on a phone number which he alleges is listed on the NDNCR.  Plaintiff also attempts to assert a claim under TCPA Section 227(c)(5) because he claims the calls and texts at issue violated 47 C.F.R. § 64.1200(c).  However, TCPA Section 227(c)(5) does not create a legally protected interest for those who receive calls or texts on business numbers.[8]  47 U.S.C. § 227(c)(5). Instead, it only creates a legally protected interest for those who receive calls or texts on "residential" numbers registered on the NDNCR.[9]  *Id*.

TCPA Section 227(c)(5) states in relevant part: :

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State . . .

---

[7] *See* fn. 2.

[8] *See* fn. 2.

[9] *See* fn. 2.

47 U.S.C. § 227(c)(5); *see also Bank v. Independence Energy Group LLC*, 2014 U.S. Dist. LEXIS 141141, *8-9 (E.D.N.Y. 2014) ("businesses should be able to gather numbers from public directories or websites that list business telephone numbers (such as the Yellow Pages) under the assumption that such lines are not residential . . . [and] [a] telephone subscriber who registers a line with the telephone company as a residential line but then lists the number in the Yellow Pages and other directories as a business line sacrifices the protections afforded by the TCPA").

Even though a violation of 47 C.F.R. § 64.1200(c) must be brought under TCPA Section 227(c)(5), a plain reading of 47 C.F.R. § 64.1200(c) also shows it does not apply to not apply to business to business communications. *Id*. In particular, 47 C.F.R. § 64.1200(c) states in relevant part:

> No person or entity shall initiate any telephone solicitation to . . . [a] ***residential telephone subscriber*** who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R. § 64.1200(c) (emphasis added).

Moreover, the Federal Communications Commission ("FCC") has held on at least two occasions that the "national do-not-call registry applies to calls to 'residential subscribers' and does not preclude calls to businesses." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2005 FCC LEXIS 1158, *15 (2005); *see also Worsham v. Disc. Power, Inc.*, 2021 U.S. Dist. LEXIS 1931, *10 (D. Md. 2021) ("As the Commission has previously stated, the National Do Not Call Registry applies to 'residential subscribers' and does not preclude calls to businesses."), citing *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 9779, 9785 (2008)

Courts have agreed.  In *Target Advance LLC*, the court dismissed a TCPA claim for lack of standing.  2019 U.S. Dist. LEXIS 64713 at 14-18.  In doing so, the court held "because Plaintiff held the Phone Number out to the world as a business phone number, he could not register it on the National Do Not Call Registry for purposes of avoiding business-to-business calls, such as those giving rise to this action" and therefore did not suffer "an injury-in-fact by way of receiving business-to-business robocalls on a phone number he registered on the National Do Not Call Registry."  *Id*.

The court reached a similar result in *Worsham v. Disc. Power, Inc.*, 2021 U.S. Dist. LEXIS 1931, *7-12 (D. Md. 2021).  In *Worsham*, the plaintiff brought a TCPA claim based on alleged calls he received after registering his number on the NDNCR.  *Id*.  In support of his claim, he conclusorily alleged the number at issue was a "residential landline."  *Id*.  Despite this conclusory allegation, the defendant moved to dismiss arguing the plaintiff lacked standing because he "held publicly that the subject phone number [wa]s a business phone number" (i.e., the number for his law firm).  *Id*.  The court agreed with the defendant and held that the plaintiff's conclusory allegation that the number was "residential" was insufficient to plausibly establish he satisfied Article III's standing requirement.  *Id*.; *see also Bank v. Independence Energy Grp. LLC*, 2015 U.S. Dist. LEXIS 96532, *4-5 (E.D.N.Y. 2015) (entering judgment in favor of the defendant because the plaintiff "held out the Subject Telephone to the public as a business line" by putting it on "his business card, professional letterhead for his law practice, and in pleadings and court filings" and providing "it to clients, prospective clients, other attorneys, and business contacts," and as such, it was not "residential" within the meaning of the TCPA).

Like the plaintiffs in *Shelton*, *Worsham*, and *Bank* (mentioned above), Plaintiff holds and has held the Number at Issue out to the world as the number for his businesses.  Plaintiff registered

the Number at Issue with the AG as Newell Contracting's number; he registered the Number at

Issue as Newell Contracting's number with the DOT; he identified the Number at Issue as the

number for his landscaping business or businesses when he registered with www.govcb.com to

bid for government contracts at the local, state, and federal levels; he identified the Number at

Issue as the number for his businesses s in publicly available court filings in lawsuits he filed on

behalf of such businesses; and he identified the Number at Issue as the business number for Newell

Landscaping' on an invoice issued by such company for snow removal services.  *See* Ex. A, Ex.

B, Ex. C, Ex. D, Ex. E, and Ex. F.[10]

Unlike most cases TCPA cases, this case does not involve a business randomly soliciting

a consumer on a "residential" number.  This case involves a business (i.e., Defendant) contacting

another business (i.e., Plaintiff's business) at a number he held out to the world as the number for

such business.  Plaintiff's allegations confirm Defendant attempted to contact one of Plaintiff's

businesses (i.e., Newell Contracting) at the number Plaintiff holds and has held out to the world as

the number for such business.  The below texts identified in the Complaint highlight this.

> This is Rick Balabon with Pella Windows and Doors by Gunton Corporation.  Pella has something for everyone at every budget.  We are running a promotion just for our ***builders/contractors***—10% off your first project this year.  If you are interested, please respond and I am happy to set you up with a consultation.  Thank you.

> Struggling to sell windows and doors off of a brochure?  Pella Windows and Doors by Gunton Corporate has multiple showroom available to you.  ***Bring your customers*** in to let them touch and feel the product to enhance their . . .

ECF No. 12, ¶24 (emphasis added).

---

[10] In considering Defendant's instant motion to dismiss for lack of subject matter jurisdiction, the Court may consider documents outside of the four corners of Plaintiff's Complaint.  *Gould Electronics Inc.*, 220 F.3d at 176.

Plaintiff likely will attempt to avoid dismissal by relying on the allegations in his Complaint where he alleges, in a conclusory manner, that the Number at Issue is a "non-commercial telephone number" and that he "uses the number for personal, residential, and household reasons." ECF No. 12, ¶16, ¶18. These conclusory allegations do not prevent dismissal because they do not satisfy the plausibility standard set forth in *Iqbal* and *Twombly*—and especially do not in light of the fact that Plaintiff registered the Number at Issue as the number for his businesses and held it out to the world as the number for his businesses (as explained above). *Collier v. Aksys Ltd.*, 2005 U.S. Dist. LEXIS 20300, n.7 (D. Conn. 2005) (court need not assume the truth of allegations "contradicted . . . by facts of which [it] may take judicial notice"); *see also Iqbal*, 556 U.S. at 678-79 (a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face" and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"); *Twombly*, 550 U.S. at 555 (a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level"); *see also TransUnion LLC*, 594 U.S. at 430-31 ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing.").

Several courts have agreed that the above-mentioned conclusory allegations Plaintiff makes here do not plausibly establish a number is a residential number sufficient to withstand a motion to dismiss. *Gillam v. Reliance First Cap., LLC*, 2023 U.S. Dist. LEXIS 29477, *9-10 (E.D.N.Y. 2023) (dismissing a TCPA claim where the complaint "contain[ed] conclusory allegations that his cell phone number was not associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use" because the plaintiff failed to "specifically allege any facts from which the Court could infer that the phone number is used for

residential purposes); *Hicks v. Alarm.com Inc.*, 2020 U.S. Dist. LEXIS 157433, *12 (E.D. Va. 2020) (dismissing a TCPA claim under Section 227(c) because the plaintiff failed to provide any factual support for his conclusory allegation the number at issue was "not associated with a business and [was] for personal use" and finding his conclusory allegation was an "insufficient basis to assign plausible liability to Defendant" under such section).

At best, Plaintiff's conclusory allegations do nothing more than potentially show the Number at Issue is a mixed use number. A potential showing does not satisfy the plausibility standard set forth by the United States Supreme Court in *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678 (a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face"); *Twombly*, 550 U.S. at 555 (2007) (a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level").

Additionally, even if the Number at Issue is a mixed use number, Plaintiff's claim under TCPA Section 227(c)(5) must still be dismissed—especially in the absence of any specific, well-pled allegation that he did not and does not use the Number at Issue as a business number. This Court, in *Shelton v. Pro. Source Lending Grp. LLC*, cited *Target Advance LLC* with approval on this issue. In doing so, it stated as follows: "[a]t the time Plaintiff sued Target Advance, the phone number at issue was listed on his business website, and Plaintiff admits that he used it for business purposes . . . The Court dismissed Plaintiff's claim because Section 227 only provides a private right of action to 'residential' numbers . . . Judge Quiñones held that because his number was accurately categorized as mixed-use and because Plaintiff held his phone number out to the world as a business phone number he lacked standing under the TCPA on that claim." 2025 U.S. Dist. LEXIS 46534 (E.D. Pa. 2025); *see also Worsham*, 2021 U.S. Dist. LEXIS 1931 at 10 ("[r]egardless of whether the 410-692-2749 number is primarily used by Worsham for residential purposes, the

number is also used for business, and business numbers are not permitted to be registered on the DNC registry").

Defendant is aware that this Court reached a different result in *Pro. Source Lending Grp. LLC* than the court reached in *Target Advance LLC* but this case is different than *Pro. Source Lending Grp.* and more like *Target Advance LLC.*  In particular, the plaintiff in *Pro Source Lending Grp.* submitted a declaration in which he attested that he stopped using the number at issue as a business number more than five years prior to receiving the calls at issue on which he based his TCPA claims.  2025 U.S. Dist. LEXIS 46534 at 7; *see also Pro. Source Lending Grp.*, case number 24-cv-4394, ECF No. 22-1.  Unlike the plaintiff in *Pro Source Lending Grp.*, Plaintiff still uses the Number at Issue as a business number.

In sum, Plaintiff holds and has held the Number at Issue out to the world as his business number which Defendant called and texted in a business to business communication.  As a result, Plaintiff does not and cannot meet his burden of plausibly establishing he has standing to assert a claim under TCPA Section 227(c)(5).

**B.    Plaintiff Lacks Standing to Assert a Claim under TCPA Section 227(b)(1)(A)(iii).**

Plaintiff did not suffer a concrete intangible or tangible injury sufficient to satisfy Article III's standing requirement because there is no "historical or common-law analogue" for the alleged three, ringless voicemails left the Number at Issue (i.e., a business number), which were business to business communications.  *TransUnion LLC*, 594 U.S. at 417, 424-25.

**1.    There Is No Common-Law Analogue for the Three Ringless Voicemails Allegedly Left on the Number at Issue—a Business Number.**

Plaintiff attempts to establish an intangible injury based on his conclusory allegation that his "privacy ha[d] been violated" as a result of the three alleged ringless voicemails left on the Number at Issue.  ECF No. 12, ¶37.  For an intangible injury to satisfy Article III's standing

16

requirement, it must have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" and/or whether the alleged injury has "a close historical or common-law analogue." *TransUnion LLC*, 594 U.S. at 417, 424-425.

Congress enacted the TCPA because it "was animated by outrage[] over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance." *Leyse*, 804 F.3d at 325. The Third Circuit therefore held that the historical or common-law analogue for TCPA claims is intrusion upon seclusion. *Susinno*, 862 F.3d at 351.

Unlike for consumers, no historical or common-law analogue for intrusion upon seclusion exists for businesses. *Corr. Med. Care, Inc. v. Gray*, 2008 U.S. Dist. LEXIS 6596 (E.D. Pa. 2008) (dismissing an invasion of privacy claim brought by a business because "only individuals may maintain a claim for intrusion upon seclusion"); *Teri Woods Publ, L.L.C. v. Williams*, 2013 U.S. Dist. LEXIS 52745 (E.D. Pa. 2013) (holding businesses, corporations, partnerships, or unincorporated associations have no right to privacy under Pennsylvania law and dismissing an invasion of privacy claim brought by a LLC); *U.S. v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (holding that entities like corporations have no right to personal privacy); *RLO Grp. LLC v. Fonseca*, 2025 U.S. Dist. LEXIS 188194, *14-15, 22-23 (E.D.N.Y. 2025) (dismissing a claim brought under a federal statute by a LLC for lack of standing because the intangible common law injury analogue related closely to common law injuries regarding privacy and "at common law, a corporation, partnership or unincorporated association" have no personal right of privacy and, therefore, cannot bring claims for based on intangible injuries related to common law forms of invasion of privacy, including, but no limited to, intrusion upon seclusion).

17

As a result, the standing analysis differs for consumers and businesses because the common-law analogue which applies to consumers does not apply to businesses. Put simply, Plaintiff does not and cannot offer any common-law analogue for the three alleged ringless voicemails left on the Number at Issue (i.e., a business number), which were business to business communications. Plaintiff therefore cannot establish an intangible injury based on the alleged voicemails. *RLO Grp. LLC*, 2025 U.S. Dist. LEXIS 188194 at 10 (if "a plaintiff cannot show that she has suffered a type of harm similar in kind to that recognized at common law, then she has not suffered a concrete injury").

### 2.    Courts Have Held the Types of Tangible Injuries Plaintiff Alleges Do Not Satisfy Article III's Standing Requirement.

Plaintiff alleges the three ringless voicemails Defendant allegedly left on July 11, 2025, August 12, 2025, and September 2, 2025 on the Number at Issue "tied up" such number and "unnecessarily used battery life, storage space, bandwidth, and wear and tear." *Id.*, ¶16. Ringless voicemails go directly to voicemail. They do not cause a phone to ring, occupy a telephone line, or interfere with one's use of a number or phone. Therefore, these conclusory allegations should be disregarded and the complaint should be dismissed. *Iqbal*, 556 U.S. at 679 (conclusions of fact and law "are . . . not entitled to the assumption of truth" and may be disregarded).

Regardless, courts have held Plaintiff's alleged above-mentioned tangible injuries are insufficient to satisfy Article III's standing requirement. In *Grigorian v. FCA US LLC*, the court held the plaintiff did not suffer a sufficient tangible injury for Article III purposes based on alleged receipt of a ringless voicemail because the ringless voicemail did not result in a material loss of time, render the device unavailable while the voicemail was being deposited, cause the plaintiff to

incur charges, or require the plaintiff's immediate attention in the same way a ringing phone does. 838 F. App'x at 390, 393 (11th Cir. 2020).[11]

In *Grant v. Regal Auto. Grp., Inc.*, the court likewise held the plaintiff did not suffer a sufficient tangible injury for Article III purposes based on his alleged receipt of a ringless voicemail. 2022 U.S. Dist. LEXIS 244017, *12-14 (M.D. Fla. 2022). In doing so, the court held as follows:

> [a] ringless voicemail consumes only an instant to identify the nature of the message and delete the message. And unlike the ringing of a telephone, which demands the recipient's immediate attention, a ringless voicemail produces no ringing and thus no comparable claim on the recipient's attention. Finally, nothing in the record suggests that the ringless voicemails interfere — even momentarily — with the continuous operation of the device or the ability to receive other messages.

*Id*. at 12-13.

In *Harris v. Travel Resorts of Am., Inc.*, the plaintiff brought a TCPA claim based on voicemails she allegedly received. 2021 U.S. Dist. LEXIS 257303, *7-9 (S.D. Fla. 2021). She alleged she was "forced to expend time" listening to the voicemails" and that the "receipt of Defendant's unauthorized calls and voicemails drained Plaintiff's phone batteries and caused Plaintiff additional electricity expenses and wear and tear on her phone and battery." *Id*. The court

---

[11] In *Drazen v. Pinto*, the Eleventh Circuit, following its holdings in *Grigorian* and *Salcedo v. Hanna*, revisited whether a consumer's alleged receipt of a single unwanted text message was a sufficient intangible harm to satisfy Article III' standing requirement. 2023 74 F.4th 1336 (11th Cir. 2023). The court found that it was because it found a consumer's alleged receipt of a single unwanted text message had a "close relationship with a harm that has traditionally provided a basis for a lawsuit in English or American courts" and/or common-law analogue. Like the Third Circuit in *Sussino*, the court found this common-law analogue was intrusion upon seclusion. As explained, there is no common-law analogue for the three alleged ringless voicemails left on the Number at Issue (i.e., a business number), which were business to business communications. Moreover, *Drazen* did not address what potential tangible injuries could satisfy Article III's standing requirement. As such, Defendant respectfully maintains the cases it cites in this section regarding Plaintiff's alleged tangible injuries as being insufficient for Article III standing purposes still apply on this issue.

held these were insufficient to plausibly establish sufficient tangible injuries for Article III standing purposes because she did "not allege how much time was expended, how much electricity expense was incurred, what tangible damage her phone suffered from the receipt of these voicemails, or what lost opportunity she suffered as a result of the unauthorized communications." *Id*. at 7-8. The same fatal pleading deficiencies are present here. *See generally* ECF No. 12.

In *Garcia v. FCA United States LLC*, the plaintiff brought TCPA claims based on a ringless, pre-recorded voicemail he alleged he received. 2021 U.S. Dist. LEXIS 255713 (S.D. Fla. 2021). In an attempt to establish a tangible harm for standing purposes, he alleged the ringless voicemail "took up memory space" of his voicemail system and "caused depletion of [his] cellular telephone battery." *Id*. The court held these allegations were insufficient to establish a concrete tangible injury for Article III standing purposes. *Id*.

In *Eldridge v. Pet Supermarket, Inc.*, the plaintiff brought TCPA putative class action based on five unsolicited telemarketing texts in violation of Section 227(b)(1)(A)(iii). 446 F. Supp. 3d 1063 (S.D. Fla. 2020). In an attempt to establish a tangible harm for standing purposes, he alleged they "wasted his time by requiring him to open and read the messages, depleted his cellular telephone battery, and caused him to incur a usage allocation deduction to his text messaging or data plan." *Id*. at 1067. The court held all of these were insufficient to establish he suffered a sufficient concrete tangible injury for Article III purposes in part because he provided no factual support for conclusory allegation that "Defendant's texts depleted his battery or consumed his cellular data and messaging plan." *Id*. at 1070, 1072.

The above cases are not outliers. *See*, *e.g.*, *Toney v. Advantage Chrysler-Dodge-Jeep*, 2021 U.S. Dist. LEXIS 141242, *11 (M.D. Fla. 2021) (holding the plaintiff lacked standing to bring a claim based on his alleged receipt of a ringless voicemail in part because he did not provide any

factual support for his conclusory allegation that the voicemail rendered his phone unavailable for other calls or messages); *Salcedo v. Hanna*, 936 F.3d 1162, 1168-72 (11th Cir. 2019) (holding the plaintiff's conclusory allegations that he wasted time generally without a specific time allegation and that text message at issue rendered his device unable to perform its ordinary functions were insufficient to satisfy Article III's standing requirement); *Fenwick v. Orthopedic Specialty Institute, PLLC*, 2020 U.S. Dist. LEXIS 21566 (S.D. Fla. 2020) (the magistrate judge recommended that the court find the plaintiff lacked standing despite her allegations that she received two back-to-back telemarketing messages which wasted 22 minutes of her time, used memory space on her cellular phone, and depleted her cellular telephone battery); *Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211, 1225 & n.3 (S.D. Fla. 2020) (rejecting a battery-depletion argument in the context of Article III standing in part because the allegations in the complaint did not plausibly establish that the offending messages caused any battery depletion).

## C.     Plaintiff Lacks Standing to Assert a Claim or Request for Injunctive Relief.

In his Prayer for Relief paragraph, Plaintiff on behalf of himself and one of the putative classes he seeks to represent, seeks "[i]njunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future." ECF No. 12, pg. 11. Yet, his allegations confirm Defendant allegedly last called or texted the Number at Issue in September 2025—approximately six months ago. *See generally* ECF No. 12. Plaintiff does not (and cannot) offer any allegations to suggest additional calls or texts are impending or likely to occur the future. *Id*. To seek the forward-looking injunctive relief he seeks, he was required to do so. Without such allegations, Plaintiff fails to plausibly establish he has Article III standing to seek such relief and

his claim and/or request for same must be dismissed and/or stricken. *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251-52 (S.D. Fla. 2019) (dismissing a claim for injunctive relief in a TCPA putative class action for lack of Article III standing because the plaintiff "has not pleaded any allegations or otherwise shown that he, or any member of the putative class, will ever again receive another ringless voicemail from Defendant in the future"); *Brooks v. PSCU, LLC*, 2025 U.S. Dist. LEXIS 110323, *18 (M.D. Fla. 2025) (dismissing and/or striking a claim for injunctive relief in a TCPA case for lack of standing because the plaintiff did not set forth any allegations in the complaint that "tend[ed] to show that future unsolicited calls from the defendants are certainly impending"); *see also TransUnion LLC*, 594 U.S. at 431 ("standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief").

## V.  **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's First Amended Class Action Complaint and/or grant any and other appropriate relief.

Respectfully submitted,

Dated: March 10, 2026

**HINSHAW & CULBERTSON LLP**
*Counsel for Defendant*
*Gunton Corporation*

By: */s/ Fred W. Hoensch*
Fred W. Hoensch
111 Wood Avenue, Suite 210
Iselin, NJ 08830
Telephone: (908) 374-0337
fhoensch@hinshawlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Fred W. Hoensch, certify that on March 10, 2026, I caused a copies of the instant Motion, Proposed Order, Memorandum of Law, and all Exhibits thereto, to be electronically filed and served upon all counsel of record via the Court's CM/ECF system.

*/s/ Fred W. Hoensch*
Fred W. Hoensch
