**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff<br><br>vs.<br><br>GUNTON CORPORATION<br><br>    Defendant. | Case No. 25-cv-6074 |

**PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

**Table of Contents**

**Introduction** ................................................................................................ 2

**Background** ................................................................................................. 3

**Argument** ................................................................................................... 5

I. **Defendant's Argument That Plaintiff Lacks Standing to Pursue His Prerecorded-Message Claim Is Foreclosed by Third Circuit Law** ..................... 5

II. **Plaintiff's Telephone Number Is a Personal Residential Cellular Line, Not a Business Number** ......................................................................... 13

**Conclusion** ................................................................................................ 18

## Table of Authorities

### Cases

*Bank v. Indep. Energy Grp. LLC*, 2014 WL 4954618 (E.D.N.Y. Oct. 2, 2014) .................... 14, 15

*Beard v. John Hester Chevrolet, LLC*, 640 F. Supp. 3d 420 (E.D.N.C. 2022) ...................... 5

*Callier v. Unified Health, LLC*, 2024 WL 3418778 (W.D. Tex. July 15, 2024) .................... 16

*Cellco P'ship v. Plaza Resorts Inc.*, 2013 WL 5436553 (S.D. Fla. Sept. 27, 2013) ............. 13

*Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021) .......................................... 7

*CTS Corp. v. Waldburger*, 573 U.S. 1 (2014) ....................................................................... 11

*De Los Santos v. Millward Brown, Inc.*, 2014 WL 2938605 (S.D. Fla. June 30, 2014) ........ 13

*Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) ..................................................................... 9

*Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020) ................................................ 7

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ........................................... 5, 12

*Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) ..................................................... 7

*Grant v. Regal Auto. Grp.*, 2020 U.S. Dist. LEXIS 248347 (M.D. Fla. July 30, 2020)........... 5

*Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287 (3d Cir. 2012) ................................................ 11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...................................................................... 6

*Manuel v. NRA Grp. LLC*, 722 F. App'x 141 (3d Cir. 2018) ........................................... 10, 11

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) ............................................................ 7

*Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025) ........................................... 2, 17

*Perrong v. Victory Phones LLC*, 2021 U.S. Dist. LEXIS 132404 (E.D. Pa. July 15, 2021) .10, 11

*Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, 2019 U.S. Dist. LEXIS 103796 (M.D. Fla. June 21, 2019) ................................................................................................................................... 6

*Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907 (W.D. Mich. 2018)…............................. 5

*Schaevitz v. Braman Hyundai, Inc.*, 2019 U.S. Dist. LEXIS 48906 (S.D. Fla. Mar. 25, 2019) .. 6

*Shelton v. Pro Source Lending Grp. LLC*, 2025 WL 817485 (E.D. Pa. Mar. 14, 2025) ........... 16

*Shelton v. Target Advance LLC*, 2019 U.S. Dist. LEXIS 64713 (E.D. Pa. 2019)...................... 13

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ................................................................. 6

*Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017) ................................... 2, 7, 8, 10, 12

*Throndson v. Huntington Nat'l Bank*, 2020 U.S. Dist. LEXIS 111060 (S.D. Ohio 2020)……….12

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) ............................. 7, 8, 9

*Warnick v. Dish Network LLC*, 2014 WL 12537066 (D. Colo. Sept. 30, 2014) .......................... 13

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) .................................................................... 5, 11, 12, 13
47 U.S.C. § 227(c) ....................................................................................................... 2, 11
47 U.S.C. § 227(c)(5) ........................................................................................................ 13

**Rules and Regulations**

47 C.F.R. § 64.1200(c)(2) ................................................................................................ 13, 14

**Other Authorities**

In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961 (2015) ....... 5

**Introduction**

Defendant's motion fails for a simple reason: it attempts to convert a straightforward TCPA case into a fact dispute about how Plaintiff's telephone number might be characterized and what type of telemarketing campaign the Defendant attempted to embark on, while ignoring binding Third Circuit law and the well-pleaded allegations of the Complaint.

Plaintiff alleges that Defendant sent multiple unsolicited telemarketing text messages and prerecorded voice calls to his personal cellular telephone number, without consent, despite his registration on the National Do Not Call Registry. Under *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017) (holding receipt of a single missed call resulting in a prerecorded voicemail to be sufficiently concrete injury), those allegations alone establish a concrete injury sufficient for Article III standing.

Defendant's argument—that the number should somehow be treated as a "business line"— fails for two independent reasons. First, it is legally irrelevant to standing for receipt of a pre-recorded call, which turns on the nature of the harm, not the label applied to the phone number. Second, even if it mattered, Plaintiff plausibly alleges—and now confirms—that the number at issue is his personal cellular phone used for residential purposes, and that he maintains a separate number for business use.

Defendant's attack on the Plaintiff's National Do Not Call Registry claim fares no better as Plaintiff alleges that his number has been registered on the National Do Not Call Registry and that Defendant nevertheless initiated multiple telemarketing communications to his personal number. Those allegations alone state a claim under 47 U.S.C. § 227(c). Moreover, this Court has already rejected a nearly identical attempt to dismiss claims involving this same telephone number, holding that whether the number is "residential" presents an inquiry not suitable for resolution at

the pleading stage. *See Newell v. JR Cap., LLC,* 791 F. Supp. 3d 571, 574 (E.D. Pa. 2025). The same result should follow here.

At bottom, Defendant's motion asks this Court to resolve factual disputes and credit its own characterization of the evidence over Plaintiff's well-pleaded allegations. That is improper at the motion to dismiss stage. The motion should be denied.

## Background

Plaintiff Jourey Newell brings this action under the Telephone Consumer Protection Act ("TCPA"), a statute enacted to protect consumers from intrusive telemarketing practices and unwanted automated calls. Congress passed the TCPA in response to widespread consumer outrage over telemarketing calls that invaded personal privacy and disrupted domestic peace. Plaintiff is an individual residing in this District. His cellular telephone number is a non-commercial residential telephone number that he uses for personal, residential, and household purposes. *See* First Amended Complaint, ECF No. 12 ¶¶16–18.

Plaintiff placed his telephone number on the National Do Not Call Registry on March 19, 2025, in order to prevent unwanted telemarketing solicitations. *Id.* at ¶19. Despite Plaintiff's registration on the Do Not Call Registry and the absence of any consent, Defendant initiated a series of unsolicited telemarketing communications to Plaintiff's cellular telephone number. *Id.* ¶¶20–23. Defendant sent at least six text messages between June 19, 2025 and September 25, 2025, each promoting Defendant's products and services. *Id.* ¶23.

The text messages advertised Defendant's products and services and encouraged Plaintiff to engage with Defendant regarding window and door installations. *Id.* ¶¶24–25. In addition to these text messages, Defendant placed three calls to Plaintiff on July 11, August 12, and September

2, 2025, each of which delivered a prerecorded voice message. *Id.* ¶26. The voice messages were promotional in nature and advertised Defendant's products. *Id.* ¶28.

The messages were substantially identical and delivered in a robotic tone, demonstrating that Defendant used an artificial or prerecorded voice to contact Plaintiff. *Id.* ¶¶29–31. Plaintiff never consented to receive these calls or text messages from Defendant and had never done business with Defendant. *Id.* ¶¶20, 32. As a result of Defendant's conduct, Plaintiff experienced an invasion of privacy and other harms. The calls and messages interfered with Plaintiff's ability to use his phone for legitimate communications, consumed phone resources such as battery life and storage space, and caused annoyance and disruption. *Id.* ¶¶37–39.

Plaintiff brings this action individually and on behalf of similarly situated individuals who received similar telemarketing calls and messages from Defendant. *Id.* ¶¶40–42.

4

## Argument

**I.      Defendant's Argument That Plaintiff Lacks Standing to Pursue His Prerecorded-Message Claim Is Foreclosed by Third Circuit Law.**

The TCPA is a remedial statute enacted "to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate," *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. at 7979-80, which shields individual consumers from receiving unsolicited automated calls, *i.e.*, robocalls. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013). To this end, the TCPA prohibits or limits robocalls in various ways including, *inter alia*, prohibiting robocalls "to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

As an initial matter, the Defendant repeatedly attempts to distinguish its choice of a new type of pre-recorded voice technology (what it refers to as a Ringless Voicemail) as somehow less invasive. However, "[b]oth the FCC and the courts have recognized that the scope of the TCPA naturally evolves in parallel with telecommunications technology as it evolves…" *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018). Indeed, in a 2015 ruling, the FCC stated, "[t]he TCPA's text and legislative history reveal Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as *new technologies emerge*." *Id*. (quoting *FCC 2015 Ruling*, 30 F.C.C. Rcd. 7961, 2015 FCC LEXIS 1586, at ¶¶ 113-15 (2015) (emphasis added))

Application of these principles can be seen in district court's repeated conclusion that "ringless" voicemail technology is a "call" covered under the TCPA even though the technology did not exist when the TCPA was enacted because the purpose and method of communication – like text messages – is to communicate with a consumer via their telephone. *See Beard v. John Hester Chevrolet, LLC,* 640 F. Supp. 3d 420, 425 (E.D. N.C. November 9, 2022); *Grant v. Regal*

5

*Auto. Grp.*, No. 8:19-cv-363-T-23JSS, 2020 U.S. Dist. LEXIS 248347, at *11 (M.D. Fla. July 30, 2020) (collecting cases) *report and recommendation, adopted by Grant v. Regal Auto. Grp., No.* 8:19-cv-363-T-23JSS, 2020 U.S. Dist. LEXIS 248214, at *3 (M.D. Fla. Sep. 29, 2020); *Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, No. 6:19-cv-196-Orl-31DCI, 2019 U.S. Dist. LEXIS 103796, at *5 (M.D. Fla. June 21, 2019); *Schaevitz v. Braman Hyundai, Inc.*, No. 1:17-cv-23890-KMM, 2019 U.S. Dist. LEXIS 48906, at *8 (S.D. Fla. Mar. 25, 2019).

Given that their technology is clearly a pre-recorded voice, the Defendant attempts to claim that there's no real harm in the type of pre-recorded voice they used because they attempted to contact a business line. That argument improperly conflates Article III standing with the merits and asks the Court to resolve factual disputes at the pleading stage. The question in this section is not whether Defendant ultimately prevails on some statutory-coverage theory, but whether Plaintiff has alleged a concrete injury sufficient to invoke this Court's jurisdiction. He plainly has. Plaintiff alleges that Defendant placed three unsolicited prerecorded calls to his cellular telephone number, left substantially identical prerecorded promotional messages, sent multiple telemarketing text messages, did so without consent, and caused nuisance, invasion of privacy, and interference with the use of his phone. ECF No. 12 ¶¶23–32, 37–39. Plaintiff also confirms that these calls caused real-world disruption, requiring him to listen to or delete prerecorded voicemails and wasting his time. *See* Newell Decl. ¶¶15–17. Under Third Circuit law, those allegations are enough to establish standing.

The Article III requirement that plaintiffs demonstrate standing to sue is meant "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest". *Lujan v.*

6

*Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Congress passed the TCPA to protect phone lines from intrusive and unwanted calls. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

In fact, every court of appeals to address the question has found that the TCPA elevated harms to legally cognizable injuries such that Article III standing is established if a plaintiff alleges a statutory violation of a procedure designed to protect against the harm the statute was designed to prevent. *Cranor v. 5 Star Nutrition, L.L.C.,* 998 F.3d 686 (5th Cir. 2021) ("Cranor wants to use our Nation's telecommunications infrastructure without harassment. In that sense, he's similar to someone who wants to use another piece of infrastructure like a road or bridge without confronting a malarial pond, obnoxious noises, or disgusting odors…And 5 Star is similar to someone who illegally emits pollution or disease that damages members of the public."); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) ("An alleged harm need not actually have been actionable at common law to satisfy this inquiry, rather it must have a 'close relationship' to the type of harm that has traditionally been recognized as actionable."); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) ("A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'"); *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 462-63 (7th Cir. 2020) (Barrett, J.). Indeed, the Third Circuit squarely forecloses the Defendant's argument:

> When one sues under a statute alleging "the very injury [the statute] is intended to prevent," and the injury "has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts," a concrete injury has been pleaded. *Id.* at 639-40. We do not, and need not, conclude that intangible injuries falling short of this standard are never concrete. *See Horizon*, 846 F.3d at 638 (declining to determine minimum standard of concreteness where unnecessary to decide case). Rather, we simply observe that all intangible injuries that meet this standard *are* concrete.
>
> Applying *Horizon*'s standard to the facts of this appeal, we conclude that the injuries alleged by Susinno are concrete for two reasons.

7

> First, Congress squarely identified this injury. The TCPA addresses itself directly to single prerecorded calls from cell phones, and states that its prohibition acts "in the interest of [ ] privacy rights." 47 U.S.C. § 227(b)(2)(C). The congressional findings in support of the TCPA likewise refer to complaints that "automated or prerecorded telephone calls are a nuisance [and] . . . an invasion of privacy." Pub. L. 102-243, § 2. We therefore agree with Susinno that in asserting "nuisance and invasion of privacy" resulting from a single prerecorded telephone call, her complaint asserts "the very harm that Congress sought to prevent," arising from prototypical conduct proscribed by the TCPA. App. 11 (First Amended Complaint); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted [**10] a concrete injury under the TCPA, as they "present the precise harm and infringe the same privacy interests Congress sought to protect").

*Susinno v. Work Out World Inc.,* 862 F.3d 346, 351 (3rd Cir. 2017). Importantly, the Third

Circuit's holding in *Susinno* regarding Article III injury does not turn on any distinction between

consumer and business lines. The court's analysis is focused on the nature of the harm—

unsolicited prerecorded communications that invade privacy—not the classification of the

telephone number. *Susinno*, 862 F.3d at 351. Indeed, the Third Circuit made clear that where a

plaintiff alleges "the very harm that Congress sought to prevent," namely nuisance and invasion

of privacy caused by unsolicited prerecorded calls, a concrete injury exists for purposes of

Article III. *Id.* Here, Plaintiff alleges not one, but three prerecorded voicemail calls and multiple

telemarketing text messages. These allegations easily satisfy Article III.

Moreover, the remainder of the Third Circuit's analysis confirms that the standing

inquiry turns on the type of harm alleged—not the status of the phone line or the identity of the

recipient. In conducting its historical analysis, the court emphasized that the TCPA protects

"essentially the same interests that traditional causes of action sought to protect," namely privacy

and freedom from unwanted intrusion. *Id.* at 351–52. The court specifically held that TCPA

violations are closely related to the common-law tort of intrusion upon seclusion because

unsolicited telemarketing communications "by their nature, invade the privacy and disturb the

solitude of their recipients." *Id.* (quoting *Van Patten v. Vertical Fitness Grp., LLC,* 847 F.3d 1037 (9th Cir. 2017) (finding two unwanted text messages constituted a concrete injury under the TCPA, as they "present the precise harm and infringe the same privacy interests Congress sought to protect").

Critically, nothing in this analysis depends on whether the call was directed to a consumer, a business, or a mixed-use number. Instead, the Third Circuit made clear that Congress was not "inventing a new theory of injury," but rather elevating a preexisting privacy harm to actionable status—even where that harm might previously have been considered too minimal at common law. *Id.* at 352. In doing so, the court expressly rejected rigid limitations derived from traditional doctrines explaining that Congress chose to protect against even a single unsolicited prerecorded call because it invades the same protected privacy interests. *Id.* That reasoning forecloses Defendant's attempt to minimize the harm here based on its characterization of Plaintiff's number.

The Defendant retreats to outside of the Third Circuit to attempt to find support for its proposition. However, it relies exclusively on cases from Eleventh Circuit (mostly from district courts) that came *before Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023), which plainly held, consistent with the Third Circuit, that "the question at the core of this appeal is whether the plaintiffs who received a single unwanted, illegal telemarketing text message suffered a concrete injury. To answer that question, we consider whether the harm from receiving such a text message shares a close relationship with a traditional harm. The plaintiffs contend that it does— namely, with the harm that underlies a lawsuit for the common-law claim of intrusion upon seclusion. We agree.". As such, the Defendant's authority has been overruled. This is consistent with subsequent TCPA case law denying motions to dismiss like the Defendant's following

9

*Sussino*, including from the Third Circuit itself. *See e.g. Manuel v. NRA Grp. LLC,* 722 Fed. Appx. 141, 146 (3rd Cir. 2018) ("we said that Spokeo simply 'meant to reiterate traditional notions of standing[,]' which 'requir[es] only that [a] claimant allege some specific, identifiable trifle of injury" to be able to bring a claim in federal court. Id. (citations omitted). Once a plaintiff has done so, that plaintiff has satisfied the threshold standing requirement in Article III. *Id.* Our reasoning in *Susinno* applies with full force here. As in *Susinno*, Manuel's complaint pled that he received calls on his cell phone, and that NRA placed those calls using an automatic telephone dialing system, without his consent, in violation of the TCPA."); *Perrong v. Victory Phones LLC*, 2021 U.S. Dist. LEXIS 132404, at *7 (E.D. Pa. July 15, 2021) ("The Third Circuit Court of Appeals has made clear that a TCPA plaintiff pleads a 'concrete' injury when she 'sues under a statute alleging the very injury the statute is intended to prevent' and there exists a 'close relationship' between the statutory claim and a cause of action 'traditionally' recognized in 'English or American courts.'" *quoting Susinno*)).

The same is true here. Like the plaintiff in *Manuel* and *Susinno*, Plaintiff has alleged that he received unsolicited communications on his cellular telephone in violation of the TCPA. Specifically, Plaintiff alleges that Defendant placed multiple calls to his cellular telephone number, including three calls delivering prerecorded voice messages, without his consent. ECF No. 12 ¶¶26, 28–32. Plaintiff further alleges that Defendant sent at least six unsolicited telemarketing text messages to that same cellular telephone number. *Id.* ¶¶23–25. These communications were directed to Plaintiff's personal cellular phone, which he alleges is a non-commercial residential number used for personal, residential, and household purposes. *Id.* ¶¶16–18. That allegation is confirmed by Plaintiff's sworn declaration, in which he states that he is the subscriber of record for the number, pays the bill, and uses the number as his primary personal

10

cell phone for "personal, residential, and household purposes." *See* <u>Exhibit 1</u>, Newell Decl. ¶¶2–5. As in *Manuel*, these allegations establish that Plaintiff received unwanted telemarketing communications on his cellular telephone without consent, which is sufficient to allege a concrete injury under Article III. See *Manuel*, 722 F. App'x at 146.

This conclusion is reinforced by the statutory text itself. As the Third Circuit has emphasized, courts begin with the text because "Congress' intent is most clearly expressed in the text of the statute." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 295 (3d Cir. 2012); *see also CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014). Here, the relevant provision of the TCPA prohibits "any call" made using an artificial or prerecorded voice to "any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Notably, this provision contains no limitation based on whether the number is residential or business in nature.

That omission is significant. Elsewhere in the TCPA, Congress expressly limited certain protections to "residential telephone subscribers." *See, e.g.,* 47 U.S.C. § 227(c). The fact that Congress included a residential limitation in one section of the statute but omitted it in § 227(b)(1)(A)(iii) demonstrates that no such limitation applies here. See *Hagans*, 694 F.3d at 295 (courts presume Congress expresses its intent through the statutory text). In other words, where Congress intended to distinguish between residential and business lines, it did so explicitly—but it chose not to do so in the prerecorded call provision at issue in this case. As *Perrong* recognized, § 227(b)(1)(A)(iii) speaks in terms of telephone numbers "assigned" to cellular service, while other provisions speak expressly of "residential telephone line[s]." 2021 U.S. Dist. LEXIS 132404 at *17, 20. That textual contrast confirms that Congress knew how to impose a residential-line limitation when it wanted to, but chose not to do so in the prerecorded-call provision at issue here.

11

Accordingly, Defendant's attempt to import a "business line" limitation into §227(b)(1)(A)(iii) is contrary to the plain language of the statute and must be rejected. As "Congress did not give the FCC discretion to categorically exempt certain types of prerecorded calls made to *cellular phones* upon finding such calls are not a nuisance or invasion of privacy. Rather, the discretion discussed above was given only for prerecorded calls to residential [land]lines." *Throndson v. Huntington Nat'l Bank*, 2020 U.S. Dist. LEXIS 111060, at *14-15 (S.D. Ohio June 24, 2020) (emphasis in original). "In sum, when enacting the TCPA, Congress determined that *all prerecorded calls, regardless of their source or subject matter, were a nuisance and an invasion of privacy*." *Id.* at *15 (emphasis added). Whether labeled "business" or "residential," the injury remains the same: an unwanted prerecorded telemarketing communication to a cellphone that invades privacy and disturbs the recipient's use of their phone. Under *Susinno*, that is all that is required to establish a concrete injury for Article III standing.

Indeed, the Third Circuit has already rejected comparable efforts to narrow the protections applicable to calls made to cellular telephones *under the same section of the TCPA*. In *Gager v. Dell Financial Services, LLC*, the Third Circuit held that the content-based exemptions sometimes applicable to calls made to residential landlines do not apply to calls made to cellular phones under §227(b)(1)(A)(iii). 727 F.3d 265, 273 (3d Cir. 2013). As the Court explained, "[t]he only exemptions in the TCPA that apply to cellular phones are for emergency calls and calls made with prior express consent," and "[u]nlike the exemptions that apply exclusively to residential lines, there is no established business relationship or debt collection exemption that applies to autodialed calls made to cellular phones." *Id.* Indeed, Judge Alejandro

12

addressed this exact question in *Shelton v. Target Advance LLC*, 2019 U.S. Dist. LEXIS 64713, *13 (E.D. Pa. 2019):

> As noted, the TCPA broadly prohibits robocalls "to *any* telephone number assigned to a. . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). **The statute makes no distinction between cellphones being used for personal or business use**. Relying on the strict language interpretation of the statute, other courts have concluded that **the TCPA prohibits robocalls to *any* cellphone whether used for personal or business reasons**. *See, e.g., Warnick v. Dish Network LLC*, 2014 U.S. Dist. LEXIS 138381, 2014 WL 12537066 (D. Colo. Sept. 30, 2014), at *9-11; *De Los Santos v. Millward Brown, Inc.*, 2014 U.S. Dist. LEXIS 88711, 2014 WL 2938605, at *7 (S.D. Fla. June 30, 2014); *Cellco P'ship v. Plaza Resorts Inc.*, 2013 U.S. Dist. LEXIS 139337, 2013 WL 5436553, at *5 (S.D. Fla. Sep. 27, 2013). This Court is persuaded by and joins in the conclusion that the plain language of the TCPA prohibits robocalls to any telephone number assigned to a cellphone, whether the cellphone is used for personal matters, business, or both.

(emphasis added). Thus, for calls to a cell phone, the statute does not turn on the caller's preferred characterization of the relationship or the supposed commercial nature of the communication; it turns on whether the call was made to a cellular telephone using prohibited technology without consent. That is exactly what Plaintiff alleges here.

Accordingly, the only question presented in this section is whether Plaintiff has alleged the kind of harm that Article III requires. Under *Susinno* and *Gager*, he unquestionably has. Defendant's effort to relitigate standing through its preferred characterization of Plaintiff's number fails as a matter of law. To the extent Defendant argues that Plaintiff's number was actually a business line, that contention is addressed below and, in any event, presents a factual and merits dispute—not a basis for dismissal for lack of standing.

## II.     Plaintiff's Telephone Number Is a Personal Residential Cellular Line, Not a Business Number.

Under Section 227(c)(5) of the TCPA, an individual may register residential telephone number on a National Do Not Call Registry. A registration on the NDNC "must be honored

13

indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2). Both Section 227 and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the NDNC and provide consumers with a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C § 227 (c)(5); 47 C.F.R. § 64.1200(c)(2).

Defendant relies on scattered references suggesting that Plaintiff's telephone number may have been associated with limited business activity at some point in the past. That characterization is misleading and omits critical context. Plaintiff's telephone number is—and during the relevant period was—his personal cellular telephone number, used primarily for personal, residential, and household purposes. *See* Newell Decl. ¶¶ 2–5. Although the number may have appeared in limited or incidental business contexts years ago, any such use was neither predominant nor ongoing and had ceased well before the communications at issue in this case. *Id.* ¶¶ 9–14. Plaintiff maintains a separate, dedicated business telephone number for commercial activities, and Defendant did not contact that number. *Id.* ¶¶ 9–11. With that context, Defendant's cited cases are readily distinguishable.

In practically all the cases to which the Defendant cites, the respective courts held either (1) that the complaints did not contain sufficient factual material to establish that the telephone numbers were used for residential purposes, as in *Gillam* and *Hicks*, or (2) demonstrated business use of the number at summary judgment, as in *Bank*. In *Bank v. Indep. Energy Grp. LLC*, the Court at the pleadings stage *denied* the motion to dismiss, holding:

> Defendants claim that the number involved in this case has been held out to the public by Bank to be the business number of his law firm. They argue that Bank lists the phone number on his professional letterhead, on the signature block in court documents, and on other publicly available resources on the Internet. If Defendants are correct about the

14

> ways in which Bank has advertised this number, it would not qualify as residential under the TCPA. But the complaint does not allege the number at issue and this is a motion to dismiss.

No. 12-CV-1369, 2014 WL 4954618, at *4 (E.D.N.Y. Oct. 2, 2014). Later, after the defendant provided evidence as to the business use of the number, the Court cited to multiple facts, not present here, for its conclusion that, at the time of the alleged calls, the plaintiff, held out the telephone number to the public as a business line. *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369 JG VMS, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015).

In any event, Plaintiff's Complaint pleads facts that were not present in cases like *Gillam* and that courts have consistently found sufficient at this stage. Specifically, Plaintiff alleges that the telephone number at issue is his personal cellular telephone number, that he is the subscriber and pays for the line, and that he uses it for "personal, residential, and household purposes." ECF No. 12 ¶¶16–18. Plaintiff further alleges that Defendant directed multiple telemarketing text messages and prerecorded voice calls to that number without consent. *Id.* ¶¶23–28. These allegations are more than sufficient to plausibly establish that the number is a protected residential cellular line under the TCPA.

Even if the Court were to reach Defendant's merits-based argument, dismissal would still be improper because the Complaint plausibly alleges that Plaintiff's number is a personal residential cellular line. Plaintiff alleges that the number is a "non-commercial telephone number," that it is "a residential telephone line," and that he uses it "for personal, residential, and household reasons." ECF No. 12 ¶¶16–18. At the pleading stage, those allegations must be accepted as true. Defendant's effort to override them with competing characterizations and extra-pleading materials merely underscores that this is a factual dispute inappropriate for resolution on a motion to dismiss.

15

Moreover, Plaintiff pleads—and confirms under oath—that he maintains a separate, publicly held-out business telephone number, and that Defendant did not contact that number but instead targeted his personal cell phone. *See* Newell Decl. ¶¶9–11. Courts have repeatedly held that such allegations—identifying a number as a personal cellular line used for household purposes and distinguishing it from any business line—are sufficient to survive a motion to dismiss, regardless of a defendant's competing characterization of the number. See, e.g., *Callier v. Unified Health, LLC*, No. EP-23-CV-375-KC, 2024 WL 3418778, at *6 (W.D. Tex. July 15, 2024). At the pleadings stage, this is sufficient, under either Rule 12(b)(1) or 12(b)(6). *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *4 (E.D. Pa. Mar. 14, 2025).

Defendant's reliance on various historical and administrative records to characterize Plaintiff's personal cellular telephone number as a "business line" is misplaced. At most, these exhibits show that, years ago, Plaintiff's number may have been included in isolated filings, administrative registrations, or limited business activity—none of which establishes how the number was actually used or held out during the relevant time period. The evidence instead confirms that: (1) Plaintiff maintained a separate, dedicated business number (484-250-1170); (2) any alleged "mixed use" of the number at issue ceased no later than 2019; and (3) the business entities referenced by Defendant are no longer active. *See* Exhibit 1. Courts routinely recognize that such outdated, incidental, or administrative references do not convert a personal cellular number into a business line—particularly at the pleading stage where all reasonable inferences must be drawn in Plaintiff's favor. Indeed Judge McHugh analyzed almost this same exact scenario while denying a similar motion to dismiss in *Shelton v. Pro. Source Lending Grp. LLC*, 2025 U.S. Dist. LEXIS 46534, *9-10 (E.D. Pa. 2025):

16

> As noted above, once registered, numbers are not removed from the NDNC, and five years have lapsed since the *Target* decision. In 2019, the phone number at issue was used for both business and personal purposes. In this action, filed in 2024, Plaintiff pleads that it is used exclusively for personal use, and has not been used for business purposes since 2019. In that respect, the issue here differs from the issue decided against Plaintiff in *Target*. And Defendants [*10] point to no legal authority supporting a conclusion that past commercial use of a number permanently eliminates standing where the number continues to be listed on the NDNC. Conceptually, there is a temporal aspect to standing, as illustrated by the fact that in some cases standing is deemed not to exist because the injury alleged is hypothetical, and in other instances a case allowed to proceed is later dismissed as circumstances change.

Here, as in *Shelton*, Defendant's attempt to rely on past potentially limited business use to defeat Plaintiff's claims fails as a matter of law. The relevant inquiry is how the number was used during the time period at issue—not how it may have been referenced years earlier in unrelated or administrative contexts. Accepting Plaintiff's well-pleaded allegations as true, and drawing all reasonable inferences in his favor, the Complaint more than plausibly alleges that the number is a protected residential line. Defendant's motion should therefore be denied.

Indeed, in another TCPA matter filed by Mr. Newell, a nearly identical motion to dismiss was denied *by this very Court* regarding *the same telephone number* holding, "there appears to be a dispute of fact as to whether this is actually a residential, non-commercial number, which is not amenable to resolution under Rule 12. As Defendant acknowledges, determining whether a phone number qualifies as residential is a fact-specific, case-by-case inquiry." *See e.g. Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 574 (E.D. Pa. 2025). This Court should find the same because, at most, Defendant raises a competing factual narrative regarding the number's characterization. That is not a basis for dismissal—it is a question for discovery and, if necessary, summary judgment.

17

## Conclusion

For all of the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety. Plaintiff has plausibly alleged—and supported with sworn testimony—that Defendant directed unsolicited telemarketing text messages and prerecorded calls to his personal cellular telephone number without consent, causing the precise privacy and nuisance harms the TCPA was enacted to prevent. Under controlling Third Circuit precedent, those allegations more than satisfy Article III and state a claim for relief. Defendant's attempt to recharacterize Plaintiff's personal phone number as a "business line" raises, at most, a factual dispute that cannot be resolved at this stage.

Accordingly, the Court should allow this case to proceed to discovery.

RESPECTFULLY SUBMITTED AND DATED this March 18, 2026.

By: */s/ Anthony I. Paronich*
Anthony I. Paronich, *Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com

18