**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>GUNTON CORPORATION,<br><br>       Defendant. | Case No. 25-cv-6074 |

## <u>DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT</u>

Defendant Gunton Corporation ("Defendant"), through its undersigned counsel, answers Plaintiff Jourey Newell's First Amended Class Action Complaint as follows:

### BACKGROUND

1.      "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' id. § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' id. § 2(9).

**ANSWER:   Defendant states the TCPA and reasons Congress enacted it speak for themselves and denies any allegations in the above paragraph that misquote, misrepresent,**

**and/or mischaracterize same. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph.**

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. See 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. See id.; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. Id…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649-50 (4th Cir. 2019).

**ANSWER:    Defendant states the TCPA, above-referenced regulations, and above-referenced case speak for themselves and denies any allegations in the above paragraph that misquote, misrepresent, and/or mischaracterize same.**

3.      The TCPA also prohibits the use of pre-recorded messages to make calls. See 47 U.S.C. § 227(b)(3).

**ANSWER:    Defendant states the TCPA speaks for itself and denies any allegations in the above paragraph that misquote, misrepresent, and/or mischaracterize same.**

4.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

**ANSWER:    Defendant states the TCPA speaks for itself and denies any allegations in the above paragraph that misquote, misrepresent, and/or mischaracterize same.**

5.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

**ANSWER:    Defendant states the TCPA speaks for itself and denies any allegations in the above paragraph as they do not fully and accurately depict the FCC and Congress's findings.**

6.    Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), thus shifting the cost of automated or prerecorded messages onto consumers. See *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

**ANSWER:    Defendant admits that Congress intended to address consumer privacy in enacting the TCPA but denies the remaining allegations in the above paragraph to the extent that they do not fully represent and/or accurately characterize Congress' intent in enacting the TCPA.**

7.    "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching services. See FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016).

**ANSWER:    Defendant states the TCPA speaks for itself and denies any allegations in the above paragraph that misquote, misrepresent, and/or mischaracterize same.**

8.    Plaintiff brings this action under the TCPA alleging that Defendant contacted Plaintiff, whose number is on the National Do Not Call Registry and also left Plaintiff highly illegal prerecorded voice messages. These calls were made without the call recipient's prior express written consent.

**ANSWER:    Defendant admits Plaintiff purports to bring TPCA claims but denies Plaintiff has valid claims, denies the allegations in the above paragraph, and denies it violated the TCPA.**

9.    Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

**ANSWER:    Defendant admits Plaintiff purports to bring TPCA claims on behalf of himself and putative classes but denies Plaintiff has valid claims, denies the remaining allegations in the above paragraph, denies it violated the TCPA, and denies the putative classes can be certified.**

10.     A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**ANSWER:   Denied.**

## PARTIES

11.     Plaintiff is an individual residing in this District.

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.**

12.     Defendant is a corporation headquartered in Ohio.

**ANSWER:   Admitted.**

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 et seq.

**ANSWER:   Defendant maintains Plaintiff lacks Article III standing and denies the allegation in the above paragraph.**

14.     The Court has personal jurisdiction over the Defendant and venue is proper because Plaintiff resides in this District and Defendant directed and sent its calls to Plaintiff into this District.

**ANSWER:   Defendant does not contest venue, but Defendant maintains Plaintiff lacks Article III standing and therefore denies venue is proper.**

## FACTUAL ALLEGATIONS

15.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**ANSWER:    Defendant admits that Plaintiff is an "individual," but denies the remaining allegations in the above paragraph.**

16.    Plaintiff's cellular telephone number, (484) XXX-XXX, is a non-commercial telephone number.

**ANSWER:    Denied.**

17.    The number is a residential telephone line because it is assigned to a residential cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

**ANSWER:    Denied.**

18.    Plaintiff uses the number for personal, residential, and household reasons.

**ANSWER:    Denied.**

19.    Plaintiff's telephone number has been listed on the National Do Not Call Registry since March 19, 2025.

**ANSWER:    Defendant denies that listing a business phone number on the National Do Not Call Registry is a valid listing and therefore denies the allegations in the above paragraph.**

20.    Plaintiff has never been a customer of Defendant, never did business with Defendant, nor asked or inquired to be a customer of Defendant.

**ANSWER:    Defendant admits that Plaintiff in his personal capacity was not customer and never did business with the Defendant, but Defendant denies that the calls were made to Plaintiff in his personal capacity and therefore denies the remaining allegations in the above paragraph.**

21.     Despite that, the Plaintiff received at least three calls each with prerecorded voicemails from Defendant and at least six text messages from Defendant.

**ANSWER:    Denied.**

22.     All of the calls and text messages came from telephone number 610-624-4330.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.**

23.     The text messages were sent from June 19, 2025 to September 25, 2025.

**ANSWER:    Defendant admits that text messages were placed to Plaintiff's business from June 19, 2025 to September 25, 2025, but denies the remaining allegations in the above paragraph.**

24.     A sample of the text messages is shown below:



**ANSWER:** **Defendant admits that the above-referenced text messages speak for themselves.**

25.    The purpose of the text messages was to market and promote Defendant's business.

**ANSWER:   Defendant states the above-referenced text messages speak for themselves and denies any allegations in the above paragraph that misquote, misrepresent, and/or mischaracterize same and/or the reasons they were allegedly sent.**

26.     Defendant also called Plaintiff on July 11, August 12 and September 2, 2025.

**ANSWER:   Defendant admits that dropped voicemails were attempted to be made to Plaintiff's business on July 11, 2025, August 12, 2025 to September 2, 2025, but denies the remaining allegations in the above paragraph.**

27.     Defendant used an artificial or prerecorded voice in connection with the calls.

**ANSWER:   Defendant admits that dropped voicemails were attempted to be made to Plaintiff's business on July 11, 2025, August 12, 2025 to September 2, 2025, but denies the remaining allegations in the above paragraph.**

28.     The artificial or prerecorded voice message from the July 11 call is transcribed below:

> Hello. This is Rick…with Pella Windows and Doors…. I'm calling to let you know that we have a multitude of large doors available in vinyl and aluminum and wood clad in almost any configuration. In addition, we are running a promotion for fifteen percent off large doors right now. Please give me a call back in you are interested in learning more. Thank you.

**ANSWER:   Defendant states the alleged attempted dropped voicemail on July 11, 2025 was attempted to be made to Plaintiff's business.   Defendant states this alleged attempted dropped voicemail speaks for itself and denies any allegations in the above paragraph that misquote, misrepresent, and/or mischaracterize same and denies any remaining allegations in the above paragraph.**

29.     Defendant left identical/substantially similar voice messages for Plaintiff on August 12 and September 12.

9

**ANSWER:    Defendant admits that dropped voicemails were attempted to be made to Plaintiff's business on August 12, 2025 and September 12, 2025, but denies the remaining allegations in the above paragraph.**

30.    The voice on the messages sounded robotic in tone and speech pattern.

**ANSWER:    Denied.**

31.    Given the generic nature of the messages, the tone of the messages, the content of the messages, and the fact the identical/substantially similar voice messages were left on all three calls, the messages Defendant delivered to Plaintiff's cellular telephone number were prerecorded in nature.

**ANSWER:    Denied.**

32.    Plaintiff never consented to receive calls or text messages from Defendant.

**ANSWER:    Denied.**

33.    Defendant placed the subject calls voluntarily and under its own free will.

**ANSWER:    Defendant admits it makes calls to businesses voluntarily and under its own free will, but Defendant denies the remaining allegation the above paragraph.**

34.    Defendant had knowledge that it was using an artificial or prerecorded voice in connection with the subject calls it placed to (484) XXX-XXXX.

**ANSWER:    Defendant admits it has knowledge regarding its calls placed to businesses numbers, but Defendant denies the remaining allegation the above paragraph.**

35.    The aforementioned text messages to Plaintiff were also unwanted.

**ANSWER:    Denied.**

36.    The text messages were nonconsensual encounters.

**ANSWER:    Denied.**

37. Plaintiff's privacy has been violated by the above-described telemarketing calls.

**ANSWER: Denied.**

38. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, and their privacy was improperly invaded. Furthermore, the calls unnecessarily used battery life storage space, bandwidth, and wear and tear.

**ANSWER: Denied.**

39. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

**ANSWER: Denied.**

## CLASS ACTION ALLEGATIONS

40. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

**ANSWER: Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.**

41. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

**ANSWER: Defendant admits Plaintiff purports to bring this action on behalf of himself and putative classes but denies such classes exist and denies such classes can be certified.**

42. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **Robocall Class:** All persons throughout the United States (1) to whom Defendant placed a call, (2) directed to a number assigned to a cellular telephone service, but

did not provide their phone number to the Defendant and was not a customer of the Defendant, (3) in connection with which Defendant used an artificial or prerecorded voice, (4) from four years prior to the filing of this case through the date of class certification

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

**ANSWER:    Defendant admits Plaintiff purports to bring this action on behalf of himself and the above-referenced putative classes but denies such classes exist and denies such classes can be certified.**

43.    Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

**ANSWER:    Defendant admits Plaintiff excludes those referenced above from the putative classes.**

44.    Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

**ANSWER:    Denied.**

45.    This Class Action Complaint seeks injunctive relief and money damages.

**ANSWER:    Defendant admits Plaintiff seeks the above relief but denies Plaintiff or the putative classes are entitled to such relief or any other relief.**

46.    The Classes as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

12

**ANSWER:    Denied.**

47.    Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

**ANSWER:    Upon information and belief, Defendant denies there are any other people who are like Plaintiff, so Defendant denies the allegations in the above paragraph.**

48.    The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

**ANSWER:    Denied.**

49.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

**ANSWER:    Denied.**

50.    There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

**ANSWER:    Denied.**

51.    There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

    a.    Defendant's violations of the TCPA;

    b.    Defendant's conduct, pattern, and practice as it pertains to dialing telephone numbers registered on the National Do Not Call list;

    c.    Defendant's conduct, pattern, and practice as it pertains to dialing wrong or reassigned cellular telephone numbers;

    d.    Defendant's conduct, pattern, and practice as it pertains to placing calls with an artificial or prerecorded voice to wrong or reassigned cellular telephone numbers;

    e.    Defendant's use of an artificial or prerecorded voice; and

    f.    The availability of statutory penalties.

**ANSWER:    Denied.**

52.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

**ANSWER:    Denied.**

53.    Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

**ANSWER:    Defendant admits Plaintiff's counsel has filed other putative TCPA class actions but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the above paragraph.**

54.    Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

**ANSWER:    Denied.**

55.    The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.**

56.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph because it does not know what Plaintiff is aware of.**

## COUNT I
### Violation of 47 U.S.C. § 227(b)(1)(A)(iii)
### (On Behalf of Plaintiff and the Robocall Class)

57.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-56.

**ANSWER:** **Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.**

58.    Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number and the cellular telephone numbers of the members of the class, without consent.

**ANSWER:** **Denied.**

59.    Defendant willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A)(iii) in that it willfully and knowingly used an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number, and the cellular telephone numbers of the members of the class, without consent.

**ANSWER:** **Denied.**

60.    As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the class and subclass are entitled to damages in an amount to be proven at trial.

**ANSWER:** **Denied.**

15

**COUNT II**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

61.     Plaintiff incorporates each and every factual allegation contained in paragraphs 1-56.

**ANSWER:   Defendant restates and incorporates by reference its responses to the preceding paragraphs for its answer to the above paragraph.**

62.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

**ANSWER:   Denied.**

63.     Defendant's violations were negligent, willful, or knowing.

**ANSWER:   Denied.**

64.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

**ANSWER:   Denied.**

65.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone

numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**ANSWER:    Denied.**

<u>**AFFIRMATIVE DEFENSES**</u>

<u>**First Defense**</u>
<u>**(Consent)**</u>

Plaintiff's claims and the claims of the putative class members are barred in whole or in part because they consented to receiving the alleged calls and/or texts at issue and/or because Defendant had a good-faith basis to believe they consented.

<u>**Second Defense**</u>
<u>**(Estoppel, Waiver, and Unclean Hands)**</u>

Plaintiff's claims and the claims of the putative class members are barred in whole or in part by the doctrines of estoppel, waiver, and unclean hands because they accepted the alleged calls and/or texts at issue without objection and/or acted in bad faith in relation to the instant claims.

<u>**Third Defense**</u>
**(Equitable Allocation, Recoupment, Set-off, Proportionate Responsibility, and/or Comparative Fault)**

Any damages or losses sustained by Plaintiff and the putative class members must be reduced, diminished, and/or barred in proportion to the wrongful conduct of persons or entities other than Defendant under the principles of equitable allocation, recoupment, set-off, proportionate responsibility, and/or comparative fault.

## Fourth Defense
### (Standing)

Plaintiff's claims and the claims of the putative class members are barred in whole or part because they lack statutory standing and/or Article III standing to bring and maintain the instant claims.

## Fifth Defense
### (Statute of Limitations)

TCPA claims are subject to a four-year statute of limitations.  To the extent Plaintiff attempts to bring claims on behalf of himself or the putative class members for alleged violations of the TCPA that occurred more than four years prior to the filing of this action, they are time-barred.

## Sixth Defense
### (Failure to Mitigate)

Plaintiff's claims and the claims of the putative class members are barred or diminished due to their failure to mitigate damages.

## Seventh Defense
### (Good Faith Reliance)

To the extent that any violations of the TCPA occurred, which Defendant denies, they resulted from good faith reliance upon incorrect information offered by other persons or entities. *Chyba v. First Financial Asset Management*, (S.D. Cal. 2013); *Danehy v. Time Warner Cable Enterprise, LLC*, 2015 WL 5534285 (E.D.N.C. 2015).

## Eighth Defense
### (Violation of the United States' Constitution's Free Speech Clause)

Plaintiff's claims and the claims of the putative class members fail in whole or in part because the TCPA violates the United States' Constitution's First Amendment's Free Speech

18

Clause, is unconstitutionally overbroad, and is unconstitutionally vague and ambiguous in contravention of the Fifth and Fourteenth Amendment's Due Process Clauses.

## Ninth Defense
## (Due Process)

The due process clause of the Fifth Amendment to the United States Constitution prohibits an award of damages that would result in Defendant's insolvency, especially where, as here, the conduct that allegedly violated the TCPA did not cause actual injury or damages to Plaintiff or the putative class members. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Murray v. GMAC*, 434 F.3d 948 (7th Cir. 2006).

## Tenth Defense
## (Class Action Wavier and/or Agreement to Arbitrate)

Plaintiff's claims and the claims of the putative class members are barred in whole or part pursuant to class action waivers and/or arbitration agreements.

WHEREFORE, Defendant respectfully requests that the Court enter judgment in its favor and award it the attorneys' fees and costs it incurred in defending this action, along with any other relief the Court deems just and equitable.

## RESERVATION OF RIGHTS

Defendant reserves all other applicable affirmative defenses that may now or in the future be available based on discovery, other factual investigation concerning this case, or for any other reason.

## DEMAND FOR JURY TRIAL

Defendant demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

19

Respectfully submitted by,

Dated:  April 17, 2026

**HINSHAW & CULBERTSON LLP**
*Counsel for Defendant*
*Gunton Corporation*

By: */s/ Fred W. Hoensch*
Fred W. Hoensch
111 Wood Avenue, Suite 210
Iselin, NJ 08830
Telephone: (908) 374-0337
fhoensch@hinshawlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Fred W. Hoensch, certify that on April 17, 2026, I caused a copies of the instant Motion, Proposed Order, Memorandum of Law, and all Exhibits thereto, to be electronically filed and served upon all counsel of record via the Court's CM/ECF system.

*/s/ Fred W. Hoensch*
Fred W. Hoensch
