**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>GUNTON CORPORATION,<br><br>　　　　Defendant. | Civil Action No.: 2:25-cv-06074-GAM |

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>ITS MOTION TO BIFURCATE DISCOVERY</u>

Defendant Gunton Corporation ("Defendant"), through its undersigned counsel, respectfully submits this memorandum of law in support of its motion to bifurcate discovery.

Respectfully submitted by,

Dated:  April 24, 2026

**HINSHAW & CULBERTSON LLP**
*Counsel for Defendant Gunton Corporation*

By: */s/ Fred W. Hoensch*
Fred W. Hoensch
111 Wood Avenue, Suite 210
Iselin, NJ 08830
Telephone: (908) 374-0337
fhoensch@hinshawlaw.com

1

**TABLE OF CONTENTS**

I.     INTRODUCTION……………………………………………………………………4-7

II.    SUMMARY OF RELEVANT BACKGROUND……………………………………….7-8

III.   SUMMARY OF PLAINTIFF'S CLAIMS AND RELEVANT PROCEDURAL
       HISTORY…………………………………………………………………………...9-12

IV.    LEGAL STANDARDS……………………………………………….......................12-13

V.     ARGUMENT………………………………………………………………………13-18

       A.     Good Cause Exists to Bifurcate Discovery Because whether Plaintiff used the
              Number for Business Purposes rather than Residential Purposes Will Significantly
              Impact how and/or if this Litigation Proceeds and Addressing this Threshold Issue
              Before Proceeding with General Discovery, including Class Discovery, Avoids the
              Potential Wasting of Resources………………………………………………….13-15

       B.     Plaintiff Will Not Suffer any Prejudice if Discovery Is Bifurcated…………...15-16

       C.     Defendant Will Suffer Significant Prejudice if Discovery Is Not
              Bifurcated…………………………………………………………………………16-18

VI.    CONCLUSION…………………………………………………………………………...18

## TABLE OF AUTHORITIES

**Cases**

*Akselrod v. MarketPro Homebuyers LLC*, 2021 U.S. Dist. LEXIS 5253 (D. Md. 2021)…..........…15

*Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, 2018 U.S. Dist. LEXIS 120590 (N.D. Ill. 2018)……………………………………………………………………………………..14

*American States Ins. Co. v. Capital Assoc's. of Jackson Cnty, Inc.*, 392 F.3d 939 (7th Cir. 2004)………………………………………………………………………..……6, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)………………………………………..………16

*Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161 (M.D. Pa. 2019)………..……..12

*Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287 (M.D. Fla. 2020)………..………....6, 12

*Deleon v. Time Warner Cable LLC*, 2009 U.S. Dist. LEXIS 135122 (C.D. Cal. 2009)………………………………………………………………………………14, 16

*Drennan v. Md. Cas. Co.*, 366 F. Supp. 2d 1002 (D. Nev. 2005)………………………………...14

*Emerick v. U.S. Suzuki Motor Corp.,* 750 F.2d 19 (3d Cir. 1984)………………..…………...12

*FCC v. AT&T Inc.*, 562 U.S. 397 (2011)…………………………..…………….…6, 8, 11

*Harris v. Shore Funding Sols., Inc.*, 2023 U.S. Dist. LEXIS 70186 (E.D.N.Y. 2023)…….……15

*Karpenski v. Am. Gen. Life Companies, LLC*, 916 F. Supp. 2d 1188  (W.D. Wash. 2012)……...14

*Katz v. Liberty Power Corp., LLC*, 2019 U.S. Dist. LEXIS 30901 (D. Mass. 2019)…….…..14, 17

*Kemen v. Cincinnati Bell Telephone Company LLC*, 2024 U.S. Dist. LEXIS 137287 (S.D. Ohio 2024)…………………………………………………..…………………..14, 17

*Larson v. Trans Union, LLC*, 2015 U.S. Dist. LEXIS 83459 (N.D. Cal. 2015)…………..……...16

*Limestone Development Corp. v. Village of Lemont, Illinois*, 520 F.3d 797 (7th Cir. 2008)……………………………………………………………………………..16

*Loreaux v. ACB Receivables Mgmt., Inc.*, 2015 U.S. Dist. LEXIS 112250 (D.N.J. 2015)……………………………………………………………………………..12

*Newell v. Aliera Healthcare, Inc.*, 2020 U.S. Dist. LEXIS 267290  (N.D. Ga. 2020)………..13, 16

*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, 2014 U.S. Dist. LEXIS 13523 (D.N.J. 2014)………………………………………………………………………………...14, 15, 17

*Ragsdale v. Harmony Leads, Inc.*, 2025 U.S. Dist. LEXIS 89239 (D. Colo. 2025)……………….15

*RLO Grp. LLC v. Fonseca*,  2025 U.S. Dist. LEXIS 188194 (E.D.N.Y. 2025)……………………6

*Shelton v. Pro. Source Lending Grp. LLC*, 2025 U.S. Dist. LEXIS 46534 (E.D. Pa. 2025)……..…9

*Shelton v. Target Advance LLC*, 2019 U.S. Dist. LEXIS 64713 (E.D. Pa. 2019)………………8-9

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)………………………………...…6, 10, 11

*Teri Woods Publ, L.L.C. v. Williams*, 2013 U.S. Dist. LEXIS 52745 (E.D. Pa. 2013)……………..6

**Statutes**

47 U.S.C. § 227(c)(5)……………………...………………………………………………...5, 8, 9, 10

47 U.S.C. § 227(b)(1)(A)(iii)……………………………………………………6, 8, 10, 11, 12

**Other Authorities**

Fed. R. Civ. P. 26(c)…………………………………………………...……………….…..12, 13

Fed. R. Civ. P. 42(b)………………………………………………...…………………..…12, 13

## I.    <u>INTRODUCTION</u>

This Court previously held Plaintiff's allegations that he used the Number for residential purposes created a question fact as to whether he had Article III standing.  ECF No. 19.  Whether Plaintiff used the Number for business purposes rather than residential purposes will significantly impact how and/or if this litigation proceeds.  Therefore, bifurcating discovery and only allowing discovery into this limited factual issue at this time is appropriate and warranted.  The Court previously agreed in *Newell v. JR Cap., LLC*, which is a different putative TCPA[1] class action involving Plaintiff, when it entered the below order bifurcating discovery:

> The parties shall have 60 days to conduct fact discovery as to whether the telephone number alleged to have been contacted was a residential or business number.

> Any dispositive or partially dispositive motion following such fact discovery must be filed within 21 days thereafter, with responses due in accordance with the Local Rules.

> If no motion is to be filed upon expiration of this initial discovery deadline, counsel show notify the court so that a further case management order can be entered.

*See* **Exhibit A** attached hereto.

The Court's reasoning for bifurcating discovery in *JR Cap., LLC* is sound, and it should do the same here because whether Plaintiff used the Number for business purposes rather than residential purposes will significantly impact if and/or how this litigation proceeds.  In particular, Plaintiff lacks statutory standing and Article III standing to assert a claim under TCPA Section 227(c)(5) if he used the Number for business purposes.

Additionally, the analysis for whether there is Article III standing differs for a consumer who receives a call allegedly in violation of the TCPA than it does for a business.  Pursuant to *TransUnion LLC v. Ramirez*, an alleged statutory violation alone does not substantiate Article III

---

[1]TCPA refers to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

standing because "an injury in law is not an injury in fact."  594 U.S. 413, 427.  The "inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. at 424.

The Court previously denied Defendant's motion to dismiss Plaintiff's claim under TCPA Section 227(b)(1)(A)(iii) because Plaintiff "pleaded facts plausibly alleging a concrete, albeit intangible, harm implicating privacy interests . . ."  ECF No. 19. Unlike a consumer, a business cannot argue its personal privacy interests have been effected because businesses do not have a right to assert an invasion of privacy. *Teri Woods Publ, L.L.C. v. Williams*, 2013 U.S. Dist. LEXIS 52745 (E.D. Pa. 2013) (holding businesses, corporations, partnerships, or unincorporated associations have no right to privacy under Pennsylvania law and dismissing an invasion of privacy claim brought by a LLC); *RLO Grp. LLC v. Fonseca*,  2025 U.S. Dist. LEXIS 188194, *14-15, 22-23 (E.D.N.Y. 2025) (dismissing a claim brought under a federal statute by a LLC for lack of standing because the intangible common law injury analogue related closely to common law injuries regarding privacy and "at common law, a corporation, partnership or unincorporated association" have no personal right of privacy and, therefore, cannot bring claims for based on intangible injuries related to common law forms of invasion of privacy, including, but no limited to, intrusion upon seclusion); *FCC v. AT&T Inc.*, 562 U.S. 397, 406-407 (2011) ("the specific concept of 'personal privacy,' at least as a matter of common law, did not apply to corporations" and "[i]t seems to be generally agreed that the right of privacy is one pertaining only to individuals, and that a corporation or a partnership cannot claim it as such"); *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1294 (M.D. Fla. 2020) ("Daisy is a corporation.  In tort, those entities have never been understood to have privacy rights beyond their publicity."); *American States Ins. Co. v. Capital Assoc's. of Jackson Cnty, Inc.*, 392 F.3d 939, 943 (7th Cir. 2004) ("JC Hauling is a

corporation, and businesses lack interests in seclusion.  It is not just that they are 'open for business' and thus welcome phone calls and other means to alert them to profitable opportunities. It is that corporations are not alive.  Where does a corporation go when it just wants to be left alone? Most states hold that business entities lack privacy interests.").  As a result, if and how the litigation proceeds depends on whether Plaintiff used the Number for business purposes.

The parties have met and conferred about bifurcating discovery in the manner Defendant proposes.  Plaintiff's counsel objects.

## II.    SUMMARY OF RELEVANT BACKGROUND

Defendant sells windows directly to builders and contractors.  Defendant runs promotions for purposes of selling windows directly to builders and contractors.  Defendant called the Number for the purpose of selling windows directly to a builder/contractor.  In other words, the calls to the Number were meant to be a business-to-business contact. The text messages in Plaintiff's complaint prove the alleged communications to the Number were meant to be a business-to-business contact as they say:

> This is Rick Balabon with Pella Windows and Doors by Gunton Corporation.  Pella has something for everyone at every budget.  We are running a promotion just for our ***builders/contractors***—10% off your first project this year.   If you are interested, please respond and I am happy to set you up with a consultation.  Thank you.
>
> ***Struggling to sell*** windows and doors off of a brochure?  Pella Windows and Doors by Gunton Corporation has multiple showroom available to you.  ***Bring your customers*** in to let them touch and feel the product to enhance their . . .

ECF No. 12, ¶24 (emphasis added).

Plaintiff has held and holds the Number out to the world as the number for his businesses, which include, but are not limited to, Newell Contracting, LLC ("Newell Contracting"), Newell Landscaping, and Contractor Collections Co. ("CCC").  By way of example, Plaintiff registered

the Number as Newell Contracting's number with the Office of the Pennsylvania Attorney General

(the "AG") in a filing required by the Pennsylvania Home Improvement Consumer Protection

Act.[2]  *See* **Exhibit B** attached hereto.  Plaintiff also registered the Number with the United States

Department of Transportation (the "DOT") as Newell Contracting's number and with

www.govcb.com as the number for the landscaping services his business and/or businesses

offered.  *See* **Exhibit C** attached hereto.

Contrary to what the above-mentioned public record shows (i.e., that the Number is a

business number), Plaintiff alleges he used it for residential purposes.  In light of the public record

and Plaintiff's allegations, Defendant understands and acknowledges the Court found a question

of fact on whether the Number is a business or residential number.  ECF No. 19.  Thus, discovery

should now be limited to the issue of how Plaintiff utilized the Number.

If Plaintiff establishes that contrary to the available public record he utilized the Number

as a residential number rather than for business purposes, then he will have standing to assert his

claims under TCPA Sections 227(b) and 227(c) because they effect his personal privacy interests.

However, if he used the Number for business purposes, then Plaintiff cannot assert Article III

standing on the basis the calls affected his personal privacy interest.  *Shelton v. Target Advance*

*LLC*, 2019 U.S. Dist. LEXIS 64713, *14-18 (E.D. Pa. 2019) (dismissing a NDNCR claim for lack

of standing because the plaintiff "held the Phone Number out to the world as a business phone

number" and therefore did not suffer "an injury-in-fact by way of receiving business-to-business

robocalls on a phone number he registered on the National Do Not Call Registry"); *FCC*, 562 U.S.

at 406-407 ("the specific concept of 'personal privacy,' at least as a matter of common law, did

---

[2] Since 2008, the Pennsylvania Home Improvement Consumer Protection Act has required home improvement contractors who perform at least $5,000 worth of home improvements per year to register with the AG.

not apply to corporations" and "[i]t seems to be generally agreed that the right of privacy is one pertaining only to individuals, and that a corporation or a partnership cannot claim it as such")

In short, discovery should now only proceed into the limited issue of whether the Number was truly residential as Plaintiff alleges or a business number (like the public record shows). This is especially true in light of Plaintiff's allegations (i.e., the screenshots of the texts) which show the alleged communications targeted contractors/businesses.

### III.    SUMMARY OF PLAINTIFF'S CLAIMS AND RELEVANT PROCEDURAL HISTORY

#### A.    Plaintiff's Claim for Alleged Violations of TCPA Section 227(c)(5)

Plaintiff asserts a claim for alleged violations of TCPA Section 227(c)(5) based on alleged calls and texts to the Number after such number was allegedly registered on the National Do Not Call Registry ("NDNCR"). *See generally* ECF No. 12. It is undisputed that Plaintiff lacks statutory standing to assert a claim under TCPA Section 227(c)(5) if the calls/texts were made to a business number. Courts, including this Court have agreed. *Shelton v. Pro. Source Lending Grp. LLC*, 2025 U.S. Dist. LEXIS 46534 (E.D. Pa. 2025) (this Court, citing *Shelton v. Target Advance, LLC* with approval, explained that "[a]t the time Plaintiff sued Target Advance, the phone number at issue was listed on his business website, and Plaintiff admits that he used it for business purposes . . . The Court dismissed Plaintiff's claim because Section 227 only provides a private right of action to 'residential' numbers . . . Judge Quiñones held that because his number was accurately categorized as mixed-use and because Plaintiff held his phone number out to the world as a business phone number he lacked standing under the TCPA on that claim"); *see also Shelton v. Target Advance LLC*, 2019 U.S. Dist. LEXIS 64713, *14-18 (E.D. Pa. 2019) (dismissing a NDNCR claim for lack of standing because the plaintiff "held the Phone Number out to the world as a business phone number" and therefore did not suffer "an injury-in-fact by way of receiving

business-to-business robocalls on a phone number he registered on the National Do Not Call Registry"). As a result, Defendant moved to dismiss Plaintiff's claim under TCPA Section 227(c)(5) for lack of standing based on the public record which shows the numerous ways in which Plaintiff registered the Number as a business number and held it out to the world as a business number. ECF No. 16. Despite what the public record shows, Plaintiff alleges he did not use the Number for business purposes. He instead alleges he used it for residential purposes. In light of Plaintiff's position, the Court denied Defendant's motion to dismiss Plaintiff's claim under TCPA Section 227(c)(5) stating it is not "amenable to resolution under Rule 12" because Plaintiff raised a question of fact as to how he used the Number. ECF No. 19. Conducting limited discovery into this limited factual issue will significantly impact if and/or how the claim under TCPA Section 227(c)(5) can proceed.

**B.      Plaintiff's Claim for Alleged Violations of TCPA Section 227(b)(1)(A)(iii)**

Plaintiff also asserts a claim for alleged violations of TCPA Section 227(b)(1)(A)(iii) based on three alleged ringless voicemails directed to the Number. *Id*. Defendant also moved to dismiss Plaintiff's claim under TCPA Section 227(b)(1)(A)(iii) because Plaintiff lacked Article III standing to assert a claim. The Court ultimately denied Defendant's motion to dismiss Plaintiff's claim under TCPA Section 227(b)(1)(A)(iii) finding he "pleaded facts plausibly alleging a concrete, albeit intangible, harm implicating privacy interests." ECF No. 19.

Defendant understands and acknowledges that a business may have statutory standing to assert a claim under TCPA Section 227(b)(1)(A)(iii) but statutory standing and Article III standing are not the same thing. They separate and distinct concepts, such that a plaintiff may have statutory standing but not Article III standing. *TransUnion LLC*, 594 U.S. at 417, 426-427. *TransUnion* held that a plaintiff cannot assert a claim unless he or she satisfies Article III's standing

10

requirement. *TransUnion LLC*, 594 U.S. at 417, 426-427. This remains true "even in the context of a statutory violation." *Id*. at 426-427.

*TransUnion* expressly distinguished statutory standing from Article III standing when it held as follows: "[f]or standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *TransUnion LLC*, 594 U.S. at 426-27. *TransUnion* further held that "Congress may enact legal prohibitions and obligations" and "may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations," but "under Article III, an injury in law is not an injury in fact" and "we cannot treat an injury as 'concrete' for Article III purposes based only on Congress's say-so." *Id*. *TransUnion* further held that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. In doing so, *TransUnion* held that "[c]entral to assessing" whether an injury is sufficiently concrete to satisfy Article III's standing requirement "is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms . . ." *Id*. *TransUnion* explained that this "inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. at 424. If they do not, they do not satisfy Article III's standing requirement. *Id*. at 424-25.

If the Number was a business number rather than a residential line, the alleged privacy interests on which Plaintiff relied to defeat Defendant's motion to dismiss his claim under TCPA Section 227(b)(1)(A)(iii) are not implicated because a business does not have a common law right to privacy (and so it is insufficient to establish Article III standing). *FCC*, 562 U.S. at 406 ("It

11

seems to be generally agreed that the right of privacy is one pertaining only to individuals, and that a corporation or a partnership cannot claim it as such."); *Daisy*, 489 F. Supp. 3d at 1294 ("Daisy is a corporation.  In tort, those entities have never been understood to have privacy rights beyond their publicity."); *American States Ins. Co.*, 392 F.3d at 943 ("JC Hauling is a corporation, and businesses lack interests in seclusion . . . corporations are not alive.  Where does a corporation go when it just wants to be left alone?  Most states hold that business entities lack privacy interests.").

Conducting limited discovery into the limited factual issue of whether Number was a business or residential number will significantly impact if and/or how Plaintiff's claim under TCPA Section 227(b)(1)(A)(iii) can proceed.

## IV.    LEGAL STANDARDS

Motions to bifurcate discovery are typically brought pursuant to Federal Rules of Civil Procedure 26(c) or 42(b).  Federal Rule 26(c) states in relevant part that a court, at its discretion, may "issue an order to protect a party … from annoyance, embarrassment, oppression, or undue burden or expense" by "specifying terms … for the disclosure or discovery," "forbidding inquiry into certain matters," or "limiting the scope of disclosure."  Fed. R. Civ. P. 26(c)(1)(B), (D). Federal Rule 42(b) states in relevant part that "[f]or convenience, to avoid prejudice, or to expedite and economize, the [C]ourt may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  *Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 184 (M.D. Pa. 2019) (quoting Fed. R. Civ. P. 42(b)); *see also, Loreaux v. ACB Receivables Mgmt., Inc.*, 2015 U.S. Dist. LEXIS 112250, at *9-11 (D.N.J. Aug. 25, 2015) (bifurcating discovery under Rule 42(b)).

In exercising their discretion on whether to bifurcate discovery, courts "weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources."

12

*Emerick v. U.S. Suzuki Motor Corp.,* 750 F.2d 19, 22 (3d Cir.1984).  Weighing such considerations here, and regardless of which rule the Court finds appropriate (i.e., Rule 26(c) or 42(b)), bifurcating discovery is warranted and appropriate.

## V.      **ARGUMENT**

**A.      Good Cause Exists to Bifurcate Discovery Because whether Plaintiff used the Number for Business Purposes rather than Residential Purposes Will Significantly Impact how and/or if this Litigation Proceeds and Addressing this Threshold Issue Before Proceeding with General Discovery, including Class Discovery, Avoids the Potential Wasting of Resources.**

Good cause exists to bifurcate discovery and only allow discovery to proceed at this time into how Plaintiff used the Number.  Until the parties complete this discovery and this threshold issue is decided, it makes little sense to conduct significant, expensive, and burdensome class discovery (or any other discovery).  This is especially true because if discovery confirms Plaintiff used the Number for one or more of his businesses and/or held out such number to the world as the number for one or more of his businesses, his individual claims cannot proceed (in whole or in part) and any discovery beyond discovery into how Plaintiff used the Number would be rendered wasteful and unnecessary.  Put another way, proceeding with discovery on bifurcated basis serves the interests of judicial economy and is the most efficient and economical way to proceed at this time because such limited discovery has the potential to dispose of an unmeritorious class action.

Courts have bifurcated discovery into limited issues where such limited discovery has the potential to dispose of a plaintiff's claims.  In fact, as explained above, this Court bifurcated discovery in *JR Cap., LLC* and only allowed discovery into how Plaintiff used the Number.  *See* Ex. A.

This Court's order in *JR Cap., LLC* is not an outlier.  Other courts have taken the same approach.  *See*, *e.g.*, *Newell v. Aliera Healthcare, Inc.*, 2020 U.S. Dist. LEXIS 267290, *7-8 (N.D.

Ga. 2020) ("the Court finds that bifurcating discovery into two phases (*i.e.*, limited discovery into the merits of Plaintiff's individual TCPA claim followed by class-wide discovery if Plaintiff's individual TCPA complaint survives) will promote the efficient resolution of this matter [] [because] [i]t will allow the Court to address a narrow, potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff."); *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, 2014 U.S. Dist. LEXIS 13523, *15 (D.N.J. 2014) (same); *Drennan v. Md. Cas. Co.*, 366 F. Supp. 2d 1002, 1007 (D. Nev. 2005) ("[b]ifurcation is particularly appropriate when resolution of a single claim or issue could be dispositive of the entire case"); *Karpenski v. Am. Gen. Life Companies, LLC*, 916 F. Supp. 2d 1188, 1190 (W.D. Wash. 2012) (granting motion to bifurcate where resolution of claim will be "dispositive of the entire case"); *Katz v. Liberty Power Corp., LLC*, 2019 U.S. Dist. LEXIS 30901, *5 (D. Mass. 2019) (bifurcating individual merits and class discovery because "the need for class discovery may be eliminated if [defendant] is able to demonstrate that all of the named Plaintiffs lack viable individual claims"); *Deleon v. Time Warner Cable LLC*, 2009 U.S. Dist. LEXIS 135122, *3-4 (C.D. Cal. 2009) ("The Court has authority to bifurcate this case so that discovery and dispositive motions on Plaintiff's individual claims take place before submerging the parties in an ocean of class discovery."); *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, 2018 U.S. Dist. LEXIS 120590, *16 (N.D. Ill. July 19, 2018) (bifurcating discovery "where some limited, first-stage production could shave off substantial wasted efforts" on purported class claims and "perhaps. . . entirely forego class-wide discovery, saving resources and expense on all sides"); *Kemen v. Cincinnati Bell Telephone Company LLC*, 2024 U.S. Dist. LEXIS 137287, *10 (S.D. Ohio 2024) (bifurcating discovery because it was appropriate due to the need to resolve key threshold issues before delving into broader, more extensive class-based discovery and holding that bifurcation was warranted because it could

potentially eliminate the need for costly and resource-intensive class discovery); *Ragsdale v. Harmony Leads, Inc.*, 2025 U.S. Dist. LEXIS 89239, *5 (D. Colo. 2025) (ordering a "scheduling order . . . setting for the scope of the first phase of discovery on [Plaintiff's] individual claims"); *Harris v. Shore Funding Sols., Inc.*, 2023 U.S. Dist. LEXIS 70186, *11 (E.D.N.Y. 2023) (bifurcating discovery with an initial phase "limited to whether on April 19, 2022 Plaintiff received a call from Defendant at the (205) 503-XXXX number and ownership of the subject phone").

The benefits of bifurcating discovery are self-evident.  Bifurcation prevents the wasting of resources, both the Court's and parties', until the threshold issue of whether the Number was a business or residential number.  The answer to this question has the potential depose of this case in its entirety.  At a minimum, it has the potential to narrow the scope of this case and narrow the scope of any later discovery the parties may need to conduct should this case proceed.

## B.    Plaintiff Will Not Suffer any Prejudice if Discovery Is Bifurcated.

This is a relatively new case.  Plaintiff filed his amended class action complaint adding Defendant as a named defendant to this case on January 2, 2026.[3]  No discovery schedule has been entered at this time.  Any bifurcation of discovery would not be indefinite or lengthy.  Defendant maintains the parties can complete the limited discovery into whether the Number was a business or residential number within sixty days.  This short-lived sixty days is not unreasonable and would not prejudice Plaintiff or hinder his ability to later conduct any other discovery he believes he needs.  *Harris*, 2023 U.S. Dist. LEXIS 70186 at 11 ("granting Defendant's motion will not cause undue burden and expense to Plaintiff nor would it prejudice Plaintiff because this case is in the nascent stages"); *Physicians Healthsource, Inc.*, 2014 U.S. Dist. LEXIS 13523 at 15 ("While

---

[3] Plaintiff filed this action on October 24, 2025 but did not add Defendant to this action until he filed his amended complaint.  The original defendant that Plaintiff named, Pella Windows & Doors, Inc., is no longer a party to this action.

15

Plaintiff raises concerns over delay and the possibility that evidence will be lost or destroyed, these concerns are not overly persuasive."); *Akselrod v. MarketPro Homebuyers LLC*, 2021 U.S. Dist. LEXIS 5253, *5 (D. Md. Jan. 12, 2021) (rejecting argument that targeted initial discovery "poses a risk that the third-party [] used to send the messages at issue will destroy relevant call records"): *Deleon*, 2009 U.S. Dist. LEXIS 135122 at 5; ("to the extent Plaintiff is frightened that some misfortune might befall documents and witnesses while they are in Defendant's control, the Court finds that such a risk is minimal and clearly outweighed by the expenses that might be saved"); *Newell*, 2020 U.S. Dist. LEXIS 267290, at *7-8 ("any prejudice to Plaintiff is significantly outweighed by the potential burdens and costs associated with unnecessary class action discovery" because "[Defendants] are on notice to preserve evidence pertaining to this matter"); *Jones v. IAS Logistics DFW, LLC*, No. 19-cv-2510, Dkt. 74 (N.D. Ill. 2021) (holding that the plaintiff faced no prejudice in a putative class action from a stay (rather than bifurcation) of the litigation); *see also Larson v. Trans Union, LLC*, 2015 U.S. Dist. LEXIS 83459, *23 (N.D. Cal. 2015) (finding a stay (rather than a bifurcation) would not impact a plaintiff's ability to later conduct any needed discovery).

**C.      Defendant Will Suffer Significant Prejudice if Discovery Is Not Bifurcated.**

By contrast, the hardship and/or prejudice imposed upon Defendant if the Court denies its instant request to bifurcate discovery and allows general discovery, including class discovery, to proceed before the threshold issue of how Plaintiff used the Number is decided is readily apparent. Discovery, and in particular class discovery, carry significant costs—most of which fall on defendants in cases like this (i.e., putative class actions). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) ("the threat of discovery expense will push cost-conscious defendants to settle even anemic cases"); *Limestone Development Corp. v. Village of Lemont, Illinois*, 520 F.3d 797,

803 (7th Cir. 2008) ("the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim."); *Jones v. Weis*, 2009 U.S. Dist. LEXIS 49754, *5 (N.D. Ill. 2009) ("[t]he more complex the case and more costly the potential discovery"); *Katz*, 2019 U.S. Dist. LEXIS 30901 at *4 (acknowledging that "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching" summary judgment or trial).

Put simply, the significant costs and expenses Defendant would incur if forced to now conduct general discovery, including class discovery, would be a complete waste of resources if the limited discovery that Defendant proposes the parties conduct shows the Number was a business number. The prudent way to proceed is to avoid this potential wasting of resources and conduct this litigation in the most economical and efficient manner possible (i.e., bifurcating discovery and only allowing discovery into how Plaintiff used the Number). Proceeding in this way aligns with how this Court handled a nearly identical situation in *JR Cap., LLC* (more fully discussed above). It also aligns with other courts' decisions in TCPA cases and ensures a "just, speedy, and inexpensive" determination of the case. Fed. R. Civ. P. 1; *see also Kemen, LLC*, 2024 U.S. Dist. LEXIS 137287 at 9  (limiting first phase of discovery to "threshold issues that both require little discovery and could be dispositive of [Plaintiff's] individual claim"); *Fania v. Kin Ins., Inc.*, 2024 U.S. Dist. LEXIS 93665, *10 (E.D. Mich. 2024) ("requiring the parties to continue down the path of Plaintiff specific discovery . . . is the most efficient way to assure an expeditious resolution to this case. And it is the most efficient use of the Court's resources."); *Physicians Healthsource, Inc.*, 2014 U.S. Dist. LEXIS 13523 at 13-15 (limiting first phase discovery "solely to whether the faxes sent to Plaintiff are informational or whether their apparent informational content is a sham . . . will allow the Court to address a narrow, potentially dispositive issue in a timely and cost effective manner").

To the extent Plaintiff argues a bifurcation of discovery is improper because he needs class discovery at this time, Plaintiff is wrong.  In fact, avoiding such burdensome and expensive class discovery before threshold issues are decided is the exact reason courts bifurcate discovery. Information about the putative class does not become even potentially relevant until the class certification stage.  This case is not at the class certification stage (and Defendants maintain it will not make it to the class certification stage after the parties conduct limited discovery into how Plaintiff used the Number).  This further highlights why bifurcation is warranted and appropriate.

## VI.    CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court: (1) bifurcate discovery; (2) only allow discovery into whether the Number was a business or residential number to proceed at this time; (3) allow the parties sixty-days to complete such discovery; and/or (4) grant any other relief to Defendant which is equitable and just.

Respectfully submitted by,

Dated:  April 24, 2026

**HINSHAW & CULBERTSON LLP**
*Counsel for Defendant Gunton Corporation*

By: */s/ Fred W. Hoensch*
Fred W. Hoensch
111 Wood Avenue, Suite 210
Iselin, NJ 08830
Telephone: (908) 374-0337
fhoensch@hinshawlaw.com

18

## <u>CERTIFICATION OF COUNSEL</u>

The parties have met and conferred about bifurcating discovery in the manner Defendant proposes in the foregoing Motion.  Plaintiff's counsel objects.  After reasonable effort, the parties are unable to resolve this dispute.

Dated: April 24, 2026                         */s/ Fred W. Hoensch*
                                              Fred W. Hoensch

20

## **<u>CERTIFICATE OF SERVICE</u>**

I, Fred W. Hoensch, certify that on April 24, 2026, I caused a copies of the instant Motion, Memorandum of Law, Proposed Order, Index of Exhibits and all Exhibits thereto, to be electronically filed and served upon all counsel of record via the Court's CM/ECF system.

Dated: April 24, 2026                    */s/ Fred W. Hoensch*
                                  Fred W. Hoensch