## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,

           Plaintiff

vs.

GUNTON CORPORATION

           Defendant.

Case No. 25-cv-6074

## PLAINTIFF'S OPPOSITION TO THE
## DEFENDANT'S MOTION TO BIFURCATE DISCOVERY

## Introduction

Defendant asks this Court to bifurcate discovery based on a single purported "threshold" issue: whether Plaintiff's telephone number is "residential" or "business." That request is premised on the incorrect assumption that resolution of that issue will materially determine the course of this case. It will not.

Plaintiff asserts multiple claims under the Telephone Consumer Protection Act ("TCPA"), including a claim under 47 U.S.C. § 227(b)(1)(A)(iii) based on prerecorded voice messages directed to a cellular telephone. Liability under that provision does not depend on whether the number is classified as residential or business. Accordingly, even if Defendant were correct on its proposed issue, the case would proceed.

The Court has already denied Defendant's motion to dismiss and held that Plaintiff plausibly alleged a concrete injury sufficient for Article III standing. Defendant now seeks to repackage that same issue as a discovery management question, in an effort to delay broader discovery into its telemarketing practices.

Bifurcation is not appropriate where it would not dispose of the case, would require duplicative discovery, and would delay resolution of the merits. Because Defendant's proposal would do exactly that, the motion should be denied.

## Background

Plaintiff Jourey Newell brings this action under the Telephone Consumer Protection Act ("TCPA"), a statute enacted to protect consumers from intrusive telemarketing practices and unwanted automated calls. Congress passed the TCPA in response to widespread consumer outrage over telemarketing calls that invaded personal privacy and disrupted domestic peace.

Plaintiff is an individual residing in this District. His cellular telephone number is a non-commercial residential telephone number that he uses for personal, residential, and household purposes. *See* First Amended Complaint, ECF No. 12 ¶¶16–18.

Plaintiff placed his telephone number on the National Do Not Call Registry on March 19, 2025, in order to prevent unwanted telemarketing solicitations. *Id.* at ¶19. Despite Plaintiff's registration on the Do Not Call Registry and the absence of any consent, Defendant initiated a series of unsolicited telemarketing communications to Plaintiff's cellular telephone number. *Id.* ¶¶20–23. Defendant sent at least six text messages between June 19, 2025 and September 25, 2025, each promoting Defendant's products and services. *Id.* ¶23.

The text messages advertised Defendant's products and services and encouraged Plaintiff to engage with Defendant regarding window and door installations. *Id.* ¶¶24–25. In addition to these text messages, Defendant placed three calls to Plaintiff on July 11, August 12, and September 2, 2025, each of which delivered a prerecorded voice message. *Id.* ¶26. The voice messages were promotional in nature and advertised Defendant's products. *Id.* ¶28.

The messages were substantially identical and delivered in a robotic tone, demonstrating that Defendant used an artificial or prerecorded voice to contact Plaintiff. *Id.* ¶¶29–31. Plaintiff never consented to receive these calls or text messages from Defendant and had never done business with Defendant. *Id.* ¶¶20, 32. As a result of Defendant's conduct, Plaintiff experienced an invasion of privacy and other harms. The calls and messages interfered with Plaintiff's ability to use his phone for legitimate communications, consumed phone resources such as battery life and storage space, and caused annoyance and disruption. *Id.* ¶¶37–39.

Plaintiff brings this action individually and on behalf of similarly situated individuals who received similar telemarketing calls and messages from Defendant. *Id.* ¶¶40–42.

**ARGUMENT**

**I.    DEFENDANT'S PROPOSED "THRESHOLD ISSUE" DOES NOT RESOLVE PLAINTIFF'S CLAIMS AS THIS COURT FOUND A MONTH AGO AND MANDATED BY THE THIRD CIRCUIT.**

Defendant's motion rests on the premise that whether Plaintiff's telephone number is "residential" or "business" will determine whether this case proceeds. That premise is fundamentally incorrect, as the Third Circuit has emphasized, courts begin with the text because "Congress' intent is most clearly expressed in the text of the statute." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 295 (3d Cir. 2012); *see also CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014). Here, the relevant provision of the TCPA prohibits "any call" made using an artificial or prerecorded voice to "any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Notably, this provision contains no limitation based on whether the number is residential or business in nature.

That omission is significant. Elsewhere in the TCPA, Congress expressly limited certain protections to "residential telephone subscribers." *See, e.g.,* 47 U.S.C. § 227(c). The fact that Congress included a residential limitation in one section of the statute but omitted it in § 227(b)(1)(A)(iii) demonstrates that no such limitation applies here. See *Hagans*, 694 F.3d at 295 (courts presume Congress expresses its intent through the statutory text). In other words, where Congress intended to distinguish between residential and business lines, it did so explicitly—but it chose not to do so in the prerecorded call provision at issue in this case. As *Perrong* recognized, § 227(b)(1)(A)(iii) speaks in terms of telephone numbers "assigned" to cellular service, while other provisions speak expressly of "residential telephone line[s]." 2021 U.S. Dist. LEXIS 132404 at *17, 20. That textual contrast confirms that Congress knew how to impose a

residential-line limitation when it wanted to, but chose not to do so in the prerecorded-call provision at issue here.

Indeed, the Third Circuit has already rejected comparable efforts to narrow the protections applicable to calls made to cellular telephones *under the same section of the TCPA*. In *Gager v. Dell Financial Services, LLC*, the Third Circuit held that the content-based exemptions sometimes applicable to calls made to residential landlines do not apply to calls made to cellular phones under §227(b)(1)(A)(iii). 727 F.3d 265, 273 (3d Cir. 2013). As the Court explained, "[t]he only exemptions in the TCPA that apply to cellular phones are for emergency calls and calls made with prior express consent," and "[u]nlike the exemptions that apply exclusively to residential lines, there is no established business relationship or debt collection exemption that applies to autodialed calls made to cellular phones." *Id.* Indeed, Judge Alejandro addressed this exact question in *Shelton v. Target Advance LLC*, 2019 U.S. Dist. LEXIS 64713, *13 (E.D. Pa. 2019):

> As noted, the TCPA broadly prohibits robocalls "to *any* telephone number assigned to a. . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). **The statute makes no distinction between cellphones being used for personal or business use**. Relying on the strict language interpretation of the statute, other courts have concluded that **the TCPA prohibits robocalls to *any* cellphone whether used for personal or business reasons**. *See, e.g., Warnick v. Dish Network LLC*, 2014 U.S. Dist. LEXIS 138381, 2014 WL 12537066 (D. Colo. Sept. 30, 2014), at *9-11; *De Los Santos v. Millward Brown, Inc.*, 2014 U.S. Dist. LEXIS 88711, 2014 WL 2938605, at *7 (S.D. Fla. June 30, 2014); *Cellco P'ship v. Plaza Resorts Inc.*, 2013 U.S. Dist. LEXIS 139337, 2013 WL 5436553, at *5 (S.D. Fla. Sep. 27, 2013). This Court is persuaded by and joins in the conclusion that the plain language of the TCPA prohibits robocalls to any telephone number assigned to a cellphone, whether the cellphone is used for personal matters, business, or both.

(emphasis added). This Court's Order acknowledged this case law and explicitly held, "**the purposes for which he used his phone are irrelevant for purposes of this claim**, *see Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013) ('The statutory provision under which

5

Gager brought her claim bans the use of '*any* automatic telephone dialing system' to call '*any* . . . cellular telephone service.')." *See* ECF No. 19 at *1 (emphasis added).

None of the elements of that claim depend in any way on whether the number is classified as "residential" or "business." Defendant's argument therefore collapses under its own logic. Even if Defendant were to prevail entirely on its proposed discovery issue and establish that Plaintiff's number was used for business purposes, that finding would not eliminate Plaintiff's prerecorded-call claim under § 227(b)(1)(A)(iii). At most, it would affect one claim while leaving another fully intact. The case would proceed, discovery would still be required, and the parties would still need to litigate the central issues concerning Defendant's use of prerecorded messages and the existence or absence of consent. Accordingly, even under Defendant's own theory, the outcome of the proposed first phase of discovery would not terminate the litigation, would not eliminate the need for broader discovery, and would not conserve judicial or party resources. Because the case would proceed regardless of how that issue is resolved, the issue is not dispositive and cannot serve as a legitimate basis for bifurcation.

## II.     THE COURT HAS ALREADY REJECTED DEFENDANT'S STANDING THEORY

Defendant's motion is an attempt to revisit and repackage issues that this Court has already considered and rejected. In denying Defendant's motion to dismiss, the Court expressly held that Plaintiff plausibly alleged a concrete injury sufficient to satisfy Article III standing. Defendant's position is therefore inconsistent with the procedural posture of this case as the Court's Order on the motion to dismiss in no way indicated this was a factual dispute. Indeed, it is quite the opposite because the Third Circuit squarely forecloses the Defendant's argument:

> When one sues under a statute alleging "the very injury [the statute] is intended to prevent," and the injury "has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts," a concrete injury has been pleaded. *Id.* at 639-40. We do not, and need not, conclude that intangible injuries falling short of this standard are never concrete. *See Horizon*, 846 F.3d at 638 (declining to determine minimum standard of concreteness where unnecessary to decide case). Rather, we simply observe that all intangible injuries that meet this standard *are* concrete.
>
> Applying *Horizon*'s standard to the facts of this appeal, we conclude that the injuries alleged by Susinno are concrete for two reasons.
>
> First, Congress squarely identified this injury. The TCPA addresses itself directly to single prerecorded calls from cell phones, and states that its prohibition acts "in the interest of [ ] privacy rights." 47 U.S.C. § 227(b)(2)(C). The congressional findings in support of the TCPA likewise refer to complaints that "automated or prerecorded telephone calls are a nuisance [and] . . . an invasion of privacy." Pub. L. 102-243, § 2. We therefore agree with Susinno that in asserting "nuisance and invasion of privacy" resulting from a single prerecorded telephone call, her complaint asserts "the very harm that Congress sought to prevent," arising from prototypical conduct proscribed by the TCPA. App. 11 (First Amended Complaint); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted [**10] a concrete injury under the TCPA, as they "present the precise harm and infringe the same privacy interests Congress sought to protect").

*Susinno v. Work Out World Inc.,* 862 F.3d 346, 351 (3rd Cir. 2017). Importantly, the Third Circuit's holding in *Susinno* regarding Article III injury does not turn on any distinction between consumer and business lines. The court's analysis is focused on the nature of the harm—unsolicited prerecorded communications that invade privacy—not the classification of the telephone number. *Susinno*, 862 F.3d at 351. Critically, nothing in this analysis depends on whether the call was directed to a consumer, a business, or a mixed-use number as this Court held, "the purposes for which he used his phone are irrelevant for purposes of this claim, *see Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013) ('The statutory provision under which Gager brought her claim bans the use of '*any* automatic telephone dialing system' to call '*any* . . . cellular telephone service.')." *See* ECF No. 19 at *1 (emphasis added).".

In short, the Court has already determined that at least one of the Plaintiff's claims should proceed despite the very factual dispute Defendant now seeks to isolate related to business use of his telephone line. Defendant cannot relitigate that determination under the guise of bifurcation.

### III. THE PLAINTIFF DOES RISK PREJUDICE IF THE BIFURCATED DISCOVERY PERIOD ON A NON-THRESHOLD ISSUE IS PERMITTED TO PROCEED.

Defendant's request for bifurcation would cause concrete and immediate prejudice to Plaintiff and the putative class. Because the issue Defendant seeks to isolate is not truly dispositive, delaying full discovery would not streamline the case, but instead would increase the risk of evidentiary loss, impair Plaintiff's ability to prosecute the claims, and create unnecessary inefficiencies. Delay risks the destruction of relevant information required for class certification and trial. Vendors and dialer platforms routinely purge records. Every month of delay increases the chance that call logs, consent files, and scripts will be lost. Courts recognize that staged discovery in class actions can irreparably prejudice plaintiffs. *Saleh v. Crunch, LLC*, 2018 WL 11264884, at *2 (S.D. Fla. 2018).

The risk to the putative class members' interests is not merely hypothetical. Multiple decisions in TCPA class action cases have turned on the destruction of records necessary to identify class members. *See, e.g.*, *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was not available); *Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting the defendant summary judgment for the substantially the same reason). As such, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating non-parties in TCPA cases. *See, e.g.*, *Cooley v. Freedom Forever LLC et. al.*, No. 2:19-cv-562,

ECF No. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing, Inc. v. Birch Commc'ns, Inc.* No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014). Plaintiff will also be prejudiced by a stay because, "with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed." *Sanaah v. Howell*, 2009 No. 08-cv-02117-REB-KLM, U.S. Dist. LEXIS 35260, *2 (D. Colo. Apr. 9, 2009); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate").

Defendant's prejudice argument is also backwards. Defendant claims that it will suffer burden from producing broader discovery, but the discovery it seeks to delay is the same discovery that will be required regardless of how the proposed "first phase" is resolved. There is no scenario in which Defendant avoids producing call records and prerecorded message content as well as any consent-related materials if this case proceeds—and as explained above, it will proceed regardless of the outcome of the residential-versus-business issue. Defendant is therefore not avoiding burden; it is attempting to defer it while gaining a strategic advantage.

Additionally, Defendant's proposal would create practical inefficiencies that undermine its claimed goal of conserving resources. Witnesses—particularly corporate representatives and vendor personnel—would need to be prepared and deposed multiple times as the case moves from a limited phase to a broader one. Documents would need to be reviewed, produced, and analyzed in waves rather than once. The parties and the Court would be forced to repeatedly address disputes

over what falls within each phase. This fragmentation increases costs and complexity rather than reducing them. "[B]ifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-Culp v. Credit Mgmt. Co*., No. 3:cv-14-0282, 2014 U.S. Dist. LEXIS 130308, *10 (W.D. Pa. Sept. 15, 2014). That duplication is "the definition of inconvenience." *EQT Prod. Co. v. Terra Servs., LLC*, No. 14-1053, 2014 U.S. Dist. LEXIS 203680, *4 (W.D. Pa. Oct. 21, 2014). Bifurcation also generates a second, less obvious cost: disputes over what is 'merit' versus 'class' discovery that draw further on the Court's limited resources. *Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017).

Furthermore, Defendant's argument assumes that delaying discovery is neutral. It is not. Delay changes the evidentiary landscape. Data becomes harder to retrieve, third-party records become less accessible, and the ability to reconstruct events diminishes over time. Defendant benefits from that delay because it controls the information. Plaintiff and the putative class are the ones who bear the risk when access to that information is postponed. In short, Defendant is not seeking to reduce burden—it is seeking to control the timing and scope of discovery in a way that advantages itself while disadvantaging Plaintiff. That is not a proper basis for bifurcation.

Similarly, Defendant's burden argument is conclusory. Defendant must support proportionality objections with specific facts about what data exists, where it is maintained, what effort extraction requires, and why narrower alternatives would not work. Defendant's proposal instead asks the Court to accept a general assertion of burden while delaying production of the very records that will determine the scope and merits of the claims. Indeed, the Third Circuit requires specificity when claiming undue burden. When objecting to a discovery request, an objecting party must state with specificity the grounds for the objection, and not the "familiar

10

litany that an interrogatory or document production request is 'overly broad, burdensome, oppressive and irrelevant.'" (*Powell v. S. Jersey Marina, Inc.,* 2007 U.S. Dist. LEXIS 55849 (M.D. Pa. Aug. 1, 2007)). Furthermore, courts have characterized boilerplate objections, without an accompanying affidavit, to lack the specificity required, thus constituting a waiver of such objections. *See NE Techs., Inc. v. Evolving Sys.,* 2008 U.S. Dist. LEXIS 85351, *13 (D. NJ. 2008).

By contrast, Defendant will not be prejudiced if Plaintiff is permitted to proceed with discovery in the ordinary course. As another federal court explained in denying a motion to stay discovery in a TCPA case:

> In addition, [defendant] has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. [plaintiff], on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.

*    *    *

> In the meantime, it is clear that critical evidence, including records from any third parties that [defendant] may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, No. 19-cv-890, 2019 U.S. Dist. LEXIS 147676, at *18, 21-22 (S.D.N.Y. Aug. 19, 2019).

**CONCLUSION**

For all of the foregoing reasons, Defendant has failed to demonstrate that bifurcation would promote efficiency, conserve resources, or avoid prejudice. The issue Defendant seeks to isolate is not dispositive, will not resolve the case, and would leave Plaintiff's core prerecorded-call claim fully intact regardless of the outcome. As a result, Defendant's proposal would not streamline this litigation, but instead would fragment discovery, delay resolution of the merits,

11

and create unnecessary duplication. Accordingly, Plaintiff respectfully requests that the Court

deny Defendant's Motion to Bifurcate Discovery in its entirety and permit discovery to proceed

in the ordinary course.

RESPECTFULLY SUBMITTED AND DATED this April 25, 2026.

By: */s/ Anthony I. Paronich*
Anthony I. Paronich, *Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com